**19SL-CC00743**

Electronically Filed - St Louis County - February 19, 2019 - 10:16 AM

IN THE CIRCUIT COURT OF ST. LOUIS COUNTY
STATE OF MISSOURI

| | |
|---|---|
| KIRKSHIRE CONDOMINIUM ASSOCIATION )<br>A Missouri nonprofit corporation ) | |
| ) | |
| Plaintiff ) | Case No. |
| ) | |
| Vs. ) | Division No: |
| ) | |
| GWEN ARTHUR ) | |
| Serve at:    1055 Pinegate ) | |
| St. Louis MO 63122 ) | |
| ) | FORECLOSURE |
| SECRETARY OF HOUSING AND URBAN ) | |
| DEVELOPMENT ) | |
| Serve at:    Regional Office ) | |
| Gateway Tower 2 ) | |
| 400 State Avenue ) | |
| Kansas City, KS 66101-2406 ) | |
| ) | |
| VANTAGE CREDIT UNION ) | |
| Serve at:    Authorized Agent ) | |
| Administrative Office Building ) | |
| 4020 Fee Fee Road ) | |
| Bridgeton, MO 63044 ) | |
| ) | |
| And ) | |
| MIDFIRST BANK SERVICES IN. ) | |
| Serve at:    Midfirst Bank Corporate Office ) | |
| 999 North West Grand Blvd. ) | |
| Oklahoma City, OK 73118 ) | |
| ) | |
| Defendants ) | |

## PETITION: COUNT 1 ASSOCIATION ASSESSMENTS

COMES NOW, Plaintiff Kirkshire Condominium Association ("Association"), and for Count I
of its Petition against Defendant Gwen A. Arthur (hereinafter referred to as "Arthur") states:

1. Plaintiff at all times mentioned herein was and is a nonprofit corporation organized
   and existing under the laws of the State of Missouri, with its principal place of
   business in St. Louis County, Missouri.

1

Electronically Filed - St Louis County - February 19, 2019 - 10:16 AM

2. Plaintiff is the unit owners' association of Kirkshire Condominium ("Condominium") organized pursuant to the Missouri Condominium Property Act ("Act") Sections 448.005 to 448.210 Mo.Rev.Stat., and the Missouri Uniform Condominium Act, and the Fourth Amendment and Restatement of Kirkshire Condominium Declaration of Condominium and By-Laws as may be amended ("Declaration") and as recorded in the official records of the Recorder of Deeds Office of St. Louis County, Missouri in Book 17502, Page 4658.

3. All acts complained of herein occurred within St. Louis County, Missouri.

4. Gwen A. Arthur is a resident of St. Louis County, Missouri and was and is the lawful owner of Unit 8 of the Condominium, known and numbered as 1055 Pinegate Drive, St. Louis, MO 63122 ("Unit").  The deed is attached and marked Exhibit 1 and incorporated herein by reference.

5. Defendant Gwen A. Arthur acquired title to the Unit on September 8, 2000 with a General Warranty Deed that is recorded in Book 12693 Page 2177 of the official records of St. Louis County, Recorder of Deeds.

6. Defendant Gwen A. Arthur acquired title with actual or constructive notice of the provisions, covenants and restrictions contained in the Acts and the Declaration.

7. Plaintiff is lawfully authorized under the Acts and the Declaration to levy assessments against the unit owners of the Condominium, and to bring actions to enforce collection of these charges including late fees, interest and the remaining balance of the annual assessment, and to collect reasonable attorney's fees and costs incurred in the enforcement thereof from delinquent unit owners; a copy of the pertinent portions of the Act, attached hereto labeled Exhibit "2" and incorporated herein by reference, and the Declaration attached hereto labeled Exhibit "3" and incorporated herein by reference.

8. Plaintiff has satisfied all conditions precedent for the collection of general assessments owed by Defendant.



Electronically Filed - St Louis County - February 19, 2019 - 10:16 AM

9. Although demand has been made, Defendant has failed and refused to pay, and continues to fail and refuses to pay, the following amounts:

| Assessments | |
|---|---|
| (January 2018 - December 2018 @ $323.00/month) | $ 3,876.00 |
| (January 2019 – February 2019 @ $352.00/month) | $ 704.00 |
| Remaining Assessments | |
| (March 2019 – December 2019 @ $352.00/month) | $ 3,520.00 |
| Late Fees @ $25.00/month | $ 325.00 |
| Recording Fees | $ 59.00 |
| Cost for Title Report | $ 250.00 |
| Cost to file petition | $ 106.00 |
| Service Fees | $ 142.00 |
| Credits | $ (119.70) |
| Interest (@ 12% per annum) | $ 324.41 |
| Attorney's Fees | $ 1,875.00 |
| **TOTAL AS OF PETITION FILING DATE** | **$11,061.71** |

Additional interest to be determined at Trial
Additional Attorney's Fees to be determined at Trial
JUDGMENT AMOUNT                    $_____

WHEREFORE, Plaintiff prays judgment against Defendant Gwen A. Arthur in the sum of $11,061.71 plus any other assessments due and owing after February 2019, late fees of $25.00 per month, interest at 12% per annum and reasonable attorney's fees up to and including the date judgment is entered and for Plaintiff's costs herein, plus reasonable attorney's fees required for collecting or defending this judgment and for such other relief as the Court may deem proper.

### COUNT II: FORECLOSURE

COMES NOW, Association and for Count II of its Petition against Defendants Gwen A. Arthur, Secretary of Housing and Urban Development (hereinafter referred to as "HUD"), Vantage Credit Union and Midfirst Bank states:

10. Association realleges and incorporates herein by reference paragraphs 1 through 9 of Count 1 of this Petition.

11. The legal description of the Unit is:

Unit 8 of the Kirkshire Condominiums, as per plat thereof recorded in Plat Book 198 Pages 1 through 6 inclusive of the St. Louis County Records, together with the undivided share of common elements and appurtenances thereto belonging all

Electronically Filed - St Louis County - February 19, 2019 - 10:16 AM

according to and more particularly described in the Kirkshire Condominiums Declaration of Condominium and By-Laws dated and recorded January 24, 1980 in Book 7227 Page 1050 and all subsequent amendments thereof.

12. HUD is a subordinate lienholder with its interest in the Unit recorded on August 3, 2011 in Book 19596 page 319 of the St. Louis County, Missouri Recorder of Deeds Office. A copy of said interest is attached as Exhibit "4" and incorporated herein by reference.

13. Midfirst Bank is a subordinate lienholder with its interest in the Unit recorded on August 7, 2008 in Book 17980 page 708 of the St. Louis County, Missouri Recorder of Deeds Office. A copy of said interest is attached as Exhibit "5" and incorporated herein by reference.

14. Midfirst Bank's interest is an assignment of the Deed of Trust which is recorded on November 18, 2002 in Book 14324, Page 1816 of the St. Louis County, Missouri Recorder of Deeds Office. A copy of said interest is attached as Exhibit "6" and incorporated herein by reference.

15. Vantage Credit Union's interest is a Deed of Trust which is recorded on July 2, 2007 in Book 17600, Page 389 of the St. Louis County, Missouri Recorder of Deeds Office. A copy of said interest is attached as Exhibit "7" and incorporated herein by reference.

16. Plaintiff Association has a statutory lien on the Unit under Section 448.3-116 of the Act for unpaid assessments levied against that Unit from the time the assessment becomes due and for fees, charges, and interest, and if an assessment is payable in installments, the full amount of the assessment is a lien from the time the first installment thereof becomes due as provided in Section 448.3-116 of the Act and in the Declaration.

17. The Association's statutory lien is prior to HUD's lien pursuant to Section 448.3-116 of the Act.

18. The Association's statutory lien is prior to Midfirst Bank's lien pursuant to Section 448.3-116 of the Act.

19. The Association's statutory lien is prior to Vantage Credit Union's lien pursuant to Section 448.3-116 of the Act.

4

Electronically Filed - St Louis County - February 19, 2019 - 10:16 AM

20. Plaintiff Association recorded a notice of lien against the Unit on February 4, 2019 in Book 23384 Page 1103 of the St. Louis County Recorder of Deeds, which has a continuing balance from the date recorded and includes additional sums that have accrued thereafter. A copy of the lien is attached hereto, labeled Exhibit "B" and incorporated herein by reference.

21. As of the date of this filing, the Association's lien is $11,061.71.

22. Plaintiff, Association is authorized to foreclose its lien by judicial proceeding in accordance with Chapter 443 Mo.Rev.Stat. as provided in Section 448.3-116 of the Act and of the Declaration.

23. Plaintiff, Association is entitled to a judgment for the debt and damages due and for the equity of redemption to be foreclosed and the Unit sold at public sale to satisfy the amount due.

24. Plaintiff Association is entitled to its costs and reasonable attorney's fees as provided in Section 448.3-116.7 of the Act and the Declaration.

WHEREFORE, Plaintiff Association prays that this Court enter judgment in its favor for the following relief:

a. That judgment shall be entered for the Plaintiff against the Defendant Gwen A. Arthur, for the total debt and damages due plus interest at 12%, costs, and Association's reasonable attorney's fees incurred;

b. That the judgment shall be levied against the real property known and numbered as 1055 Pinegate, St. Louis MO 63122;

c. That the Association's lien be foreclosed;

d. That the Unit and the equity of redemption shall be foreclosed against each Defendant and each be forever barred from any right, claim, interest or title in and to the Unit;

e. That if said real property is insufficient to satisfy the debt, damages, interest, costs and reasonable attorney's fees, that the deficiency be levied out of other property, real or personal, of said Defendant Gwen A. Arthur;

f. That the Unit shall be sold at public sale by Sheriff's Execution on Judgment, or by any other legally available method and that Plaintiff shall be allowed to bid at said sale not with cash, but against the indebtedness;

5

Electronically Filed - St. Louis County - February 19, 2019 - 10:16 AM

g. That the successful bidder at the public sale be awarded fee simple absolute title to the Unit;

h. That an order be entered granting Plaintiff possession of the Unit after foreclosure should it be the successful bidder at the foreclosure sale; and

i. For any such further relief as the Court deems just and proper.

Respectfully Submitted,
GATEWAY LAW STL, LLC

By: _____
Sarah M. Bueltmann #58317
3407 S. Jefferson Avenue, #106
St. Louis, MO 63118
(314) 529-0717
sbueltmann@gatewaylawstl.com
Attorney for Kirkshire Condominium
Association

6

Electronically Filed - St. Louis County - February 19, 2019 - 10:16 AM





*200091901002*

## JANICE M. HAMMONDS, RECORDER OF DEEDS
### ST. LOUIS COUNTY MISSOURI
### 41 SOUTH CENTRAL, CLAYTON, MO 63105

TYPE OF
INSTRUMENT
**WD**           **GORI MARION E**      GRANTOR          TO          GRANTEE
                                                  **ARTHUR GWEN A**

PROPERTY
DESCRIPTION:      **KIRKSHIRE CONDO  UNIT 8 PB 198 PG 1**

| Lien Number | Notation | Locator |
|---|---|---|
|  |  | **22N241093** |

NOTE: I, the undersigned Recorder of Deeds, do hereby certify that the information shown on this Certication Sheet as to the TYPE OF
INSTRUMENT, the NAMES of the GRANTOR and GRANTEE as well as the DESCRIPTION of the REAL PROPERTY affected
is furnished merely as a convenience only, and in the case of any discrepancy of such information between this Certification Sheet
and the attached Document, the ATTACHED DOCUMENT governs. The Recorder's official Grantor/Grantee indices are created from the
information contained in the actual Document attached hereto. Only the DOCUMENT NUMBER, the DATE and TIME of filing for recor
and the BOOK and PAGE of the recorded Document is taken from this CERTIFICATION SHEET.

## RECORDER OF DEEDS DOCUMENT CERTIFICATION

STATE OF MISSOURI  )

                              SS.

COUNTY OF ST. LOUIS )

| Document Number |
|---|
| **1,002** |

I, the undersigned Recorder of Deeds for said County and State, do hereby certify that the following and annexed
instrument of writing, which consists of ____**2**____ pages, (this page inclusive), was filed for record in my office
on the ____**19**____ day of **September** ____**2000**____ at **01:46 PM** ____ and is truly recorded in the book and
at the page shown at the top and/or bottom of this page.

In witness whereof I have hereunto set my hand and official seal the day, month and year aforesaid.

_Deputy Recorder_

Janice M. Hammonds
Recorder of Deeds
St. Louis County, Missouri

____ N.P.
____ N.P.C
____ N.N.C.
____ N.N.I.

RECORDING FEE **$18.00**
(Paid at the time of Recording)

Mail to:

**EXHIBIT**
**1**

| Destination code: 10 | P | Do Not Remove This Page |  B-12693  P-2176/2177 |

Electronically Filed - St Louis County - February 19, 2019 - 10:16 AM



Form 22A
1704

Class 5

# GENERAL WARRANTY DEED (Individual)

*This Deed*, Made and entered into this **5TH** day of **SEPTEMBER** , 2000 , by and between
MARION E. GORI, A SINGLE PERSON

of the County of St. Louis State of Missouri party or parties of the first part, and
GWEN A. ARTHUR

1055 PINEGATE DR., KIRKWOOD, MO 63122
of the County of St. Louis State of Missouri party or parties of the second part.

WITNESSETH, that the said party or parties of the first part, for and in consideration of the sum of One Dollar and other valuable considerations paid by the said party or parties of the second part, the receipt of which is hereby acknowledged, does or do by these presents GRANT, BARGAIN AND SELL, CONVEY AND CONFIRM unto the said party or parties of the second part, the following described Real Estate, situated in the County of St. Louis and State of Missouri, to-wit:

UNIT 6 OF THE KIRKSHIRE CONDOMINIUMS, AS PER PLAT THEREOF RECORDED IN PLAT BOOK 168 PAGES 1 THRU 6 INCLUSIVE OF THE ST. LOUIS COUNTY RECORDS, TOGETHER WITH THE UNDIVIDED SHARE OF COMMON ELEMENTS AND APPURTENANCES THERETO BELONGING ALL ACCORDING TO AND MORE PARTICULARLY DESCRIBED IN THE KIRKSHIRE CONDOMINIUMS DECLARATION OF CONDOMINIUM AND BY-LAWS DATED AND RECORDED JANUARY 24, 1980 IN BOOK 7227 PAGE 1050 AND ALL SUBSEQUENT AMENDMENTS THEREOF.

Together with all improvements thereon known and numbered as 1055 PINEGATE DR.

Subject to existing building lines, easements, conditions, restrictions, zoning regulations, etc., now of record, if any.

Locator No: 22N241093

TO HAVE AND TO HOLD the same, together with all rights and appurtenances to the same belonging, unto the said party or parties of the second part, and to the heirs and assigns of such party or parties forever.

The said party or parties of the first part hereby covenanting that said party or parties and the heirs, executors, administrators and assigns of such party or parties, shall and will WARRANT AND DEFEND the title to the premises unto the said party or parties of the second part, and to the heirs and assigns of such party or parties forever, against the lawful claims of all persons whomsoever, excepting, however, the general taxes for the calendar year 2000 and thereafter, and special taxes becoming a lien after the date of this deed.

IN WITNESS WHEREOF, the said party or parties of the first part has or have hereunto set their hand or hands the day and year first above written.

*Marion E. Gori*
MARION E. GORI

STATE OF MISSOURI } ss. On this 5TH day of SEPTEMBER ,2000 , before me personally appeared
County of St. Louis MARION E. GORI, A SINGLE PERSON

to me known to be the person or persons described in and who executed the foregoing instrument, and acknowledged that he executed the same as his free act and deed.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal in the County and State aforesaid, the day and year first above written.

My term expires

CHERYLL A MAURER
NOTARY PUBLIC STATE OF MISSOURI
ST. LOUIS COUNTY
MY COMMISSION EXP. OCT 16,2000

*Cheryll A. Maurer*
Notary Public.

# Chapter 448

# CONDOMINIUM PROPERTY

## CONDOMINIUM PROPERTY ACT

005.  Title of law.
010.  Definitions.
020.  Property subjected to condominium law by declaration.
030.  Declaration, contents — amendments.
045.  Declaration and plat to be recorded — plat, contents — amendment may be recorded, when.
050.  Units can be conveyed — common elements, owned, how — units not to be separated or subdivided.
060.  Instrument affecting unit affects ownership of common elements.
070.  Common elements to remain undivided — exceptions.
080.  Common element costs to be paid by unit owners — unpaid amount to constitute lien — foreclosure.
090.  Liens, against what — content, how given.
100.  Taxes, assessed and levied against units.
110.  Interest acquired by tax deed, subject to what.
120.  Insurance, how obtained — named insured — who adjusts — loss payable clause, form of — premiums, how paid.
130.  Insurance proceeds used for reconstruction — reconstruction defined.
140.  Insurance proceeds insufficient to reconstruct, effect.
150.  Sale of property, authorized, how — dissenting owner entitled to interest, value of interest defined.
160.  Property removed from condominium law, how, effects.
170.  Bylaws, amendments.
180.  Bylaws, contents.
190.  Managers may act for owners — actions — service of process — managers proper parties, when, duties.
195.  Condominium proceedings, board of managers to represent all unit owners.
200.  Managers to keep records, open to owners.
210.  Rule against perpetuities — restraints on alienation.

## UNIFORM CONDOMINIUM ACT

R.1-101.  Short title.
R.1-102.  Applicability.
R.1-103.  Definitions.
R.1-104.  Variation by agreement.
R.1-105.  Separate titles and taxation.
R.1-106.  Applicability of local ordinances, regulations, and building codes.
R.1-107.  Eminent domain.
R.1-108.  Supplemental general principles of law applicable.
R.1-109.  Construction against implicit repeal.
R.1-110.  Uniformity of application and construction.
R.1-111.  Severability.
R.1-112.  Unconscionable agreement or term of contract.
R.1-113.  Obligation of good faith.
R.1-114.  Remedies to be liberally administered.
R.2-101.  Creation of condominium.
R.2-102.  Unit boundaries.
R.2-103.  Construction and validity of declaration and bylaws.
R.2-104.  Description of units.
R.2-105.  Contents of declaration.
R.2-106.  Leasehold condominiums.
R.2-107.  Allocation of common element interests, votes, and common expense liabilities.
R.2-108.  Limited common elements.
R.2-109.  Plats and plans.
R.2-110.  Exercise of development rights.
R.2-111.  Alterations of units.
R.2-112.  Relocation of boundaries between adjoining units.
R.2-113.  Subdivision of units.
R.2-114.  Monuments as boundaries.
R.2-115.  Use for sale purposes.
R.2-116.  Easement rights.
R.2-117.  Amendment of declaration.
R.2-118.  Termination of a condominium.
R.2-119.  Rights of secured lenders.
R.2-120.  Master associations.
R.2-121.  Merger or consolidation of condominiums.

R.3-101.  Organization of unit owners' association.
R.3-102.  Powers of unit owners' association.
R.3-103.  Executive board members and officers.
R.3-104.  Transfer of special declarant rights.
R.3-105.  Termination of contracts and leases of declarant.
R.3-106.  Bylaws.
R.3-107.  Upkeep of condominium.
R.3-108.  Meetings.
R.3-109.  Quorums.
R.3-110.  Voting — proxies.
R.3-111.  Tort and contract liability.
R.3-112.  Conveyance or encumbrance of common elements.
R.3-113.  Insurance.
R.3-114.  Surplus funds.
R.3-115.  Assessments for common expenses.
R.3-116.  Lien for assessments.
R.3-117.  Other liens affecting the condominium.
R.3-118.  Association records.
R.3-119.  Association as trustee.
R.4-101.  Applicability — waiver.
R.4-102.  Liability for public offering statement requirements.
R.4-103.  Original sale certificate, general provisions.
R.4-104.  Original sale certificate, condominiums subject to development rights.
R.4-105.  Original sale certificate, time-shares.
R.4-106.  Original sale certificate, condominiums containing conversion buildings.
R.4-107.  Original sale certificate, condominium securities.
R.4-108.  Purchaser's right to cancel.
R.4-109.  Resales of units.
R.4-110.  Escrow of deposits.
R.4-111.  Release of liens.
R.4-112.  Conversion buildings — low or moderate income elderly tenants and disabled tenants, rights of.
R.4-113.  Express warranties of quality.
R.4-114.  Implied warranties of quality.
R.4-115.  Exclusion or modification of implied warranties of quality.
R.4-116.  Statute of limitations for warranties.
R.4-117.  Effect of violations on rights of action — attorney's fees.
R.4-118.  Labeling of promotional material.
R.4-119.  Declarant's obligation to complete and restore.
R.4-120.  Substantial completion of units.

## CONDOMINIUM PROPERTY ACT

**448.005.  Title of law.** — Sections 448.005 to 448.210 shall be known and may be cited as the "Condominium Property Act".

(L. 1983 H.B. 177)

**448.010.  Definitions.** — As used in sections 448.005 to 448.210, unless the context otherwise requires, the following terms mean:

(1) "Common elements", all portions of the property except the units;

(2) "Declaration", the instrument and amendments thereto by which the property is submitted to the provisions of sections 448.005 to 448.210, as hereinafter provided, and the declaration as from time to time amended;

(3) "Developer", the person, firm, or corporation who establishes a condominium through the recording of a declaration, bylaws, and plat. In the event the developer transfers the property

Revised Statutes of Missouri 2000



EXHIBIT

Case: 4:19-cv-00669-RWS   Doc. #: 1-3   Filed: 03/27/19   Page: 10 of 69 PageID #: 16

Electronically Filed - St. Louis County - February 19, 2019 - 10:16 AM

2. An agreement of two or more condominiums to merge or consolidate pursuant to subsection 1 of this section shall be evidenced by an agreement prepared, executed, recorded, and certified by the president of the association of each of the preexisting condominiums following approval by owners of units to which are allocated the percentage of votes in each condominium required to terminate that condominium. Any such agreement shall be recorded in every county in which a portion of the condominium is located, and is not effective until so recorded.

3. Every merger or consolidation agreement shall provide for the reallocation of the allocated interests in the new condominium among the units of the resultant condominium either (1) by stating such reallocations or the formulas upon which they are based or (2) by stating the percentage of overall allocated interests of the new condominium which are allocated to all of the units comprising each of the preexisting condominiums, and providing that the portion of such percentages allocated to each unit formerly comprising a part of such preexisting condominium shall be equal to the percentages of allocated interests allocated to such unit by the declaration of the preexisting condominium.

(L. 1983 H.B. 177)

**448.3-101. Organization of unit owners' association.** — A unit owners' association shall be organized no later than the date the first unit in the condominium is conveyed. The membership of the association at all times shall consist exclusively of all the unit owners or, following termination of the condominium, of all former unit owners entitled to distributions of proceeds under section 448.2-118, or their heirs, successors, or assigns. The association shall be organized as a profit or not for profit corporation or as an unincorporated association.

(L. 1983 H.B. 177)

**448.3-102. Powers of unit owners' association.** — 1. Subject to the provisions of the declaration, the association, even if unincorporated, may:

(1) Adopt and amend bylaws and rules and regulations;

(2) Adopt and amend budgets for revenues, expenditures, and reserves and collect assessments for common expenses from unit owners;

(3) Hire and terminate managing agents and other employees, agents, and independent contractors;

(4) Institute, defend, or intervene in litigation or administrative proceedings in its own name on behalf of itself or two or more unit owners on matters affecting the condominium;

(5) Make contracts and incur liabilities;

(6) Regulate the use, maintenance, repair, replacement, and modification of common elements;

(7) Cause additional improvements to be made as a part of the common elements;

(8) Acquire, hold, encumber, and convey in its own name any right, title, or interest to real or personal property; provided, that common elements may be conveyed or subjected to a security interest only pursuant to section 448.3-112;

(9) Grant easements, leases, licenses, and concessions through or over the common elements;

(10) Impose and receive any payments, fees, or charges for the use, rental, or operation of the common elements other than limited common elements described in subdivisions (2) and (4) of section 448.2-102 and services provided to unit owners;

(11) Impose charges for late payment of assessments and, after notice and an opportunity to be heard, levy reasonable fines for violations of the declaration, bylaws, and rules and regulations of the association;

(12) Impose reasonable charges for the preparation and recordation of amendments to the declaration, resale certificates required by section 448.4-109, or statements of unpaid assessments;

(13) Provide for the indemnification of its officers and executive board and maintain directors' and officers' liability insurance;

(14) Assign its rights to future income, including the right to receive common expense assessments, but only to the extent expressly provided in the declaration;

(15) Exercise any other powers conferred by the declaration or bylaws;

(16) Exercise all other powers that may be exercised in this state by legal entities of the same type as the association; and

(17) Exercise any other powers necessary and proper for the governance and operation of the association.

2. Notwithstanding the provisions of subsection 1 of this section, the declaration may not impose limita[...] tion to deal [...] restrictive tha[...] power of the [...] persons.

(L. 1983 H.B. 177)

**448.3-103.** [...] officers. — 1. [...] tion, the bylaw[...] other provisi[...] 448.4-120, the [...] instances on bel[...] mance of their [...] the executive b[...] appointed by t[...] fiduciaries of th[...] the unit owners[...]

2. The exec[...] of the associat[...] terminate the o[...] of the executiv[...] tions, powers a[...] executive boar[...] board may fill [...] the unexpired [...]

3. Within th[...] proposed budg[...] executive boar[...] budget to all th[...] for a meeting [...] ratification of th[...] less than fourte[...] mailing of the s[...] a majority of a [...] vote specified i[...] get, the budget [...] rum is present. [...] is rejected, the p[...] unit owners sha[...] the unit owners [...] posed by the ex[...]

4. Subject to [...] provide for a pe[...] association, dur[...] person designa[...] remove the offi[...] tive board. Reg[...] the declaration, [...] terminates no l[...] days after conve[...] the units which [...]

Case: 4:19-cv-00669-RWS    Doc. #: 1-3    Filed: 03/27/19    Page: 11 of 69 PageID #: 17

Electronically Filed - St Louis County - February 19, 2019 - 10:16 AM

ceeds attributable to the damaged common elements shall be used to restore the damaged area to a condition compatible with the remainder of the condominium, (2) the insurance proceeds attributable to units and limited common elements which are not rebuilt shall be distributed to the owners of those units and the owners of the units to which those limited common elements were allocated, and (3) the remainder of the proceeds shall be distributed to all the unit owners or lienholders, as their interests may appear, in proportion to the common element interests of all units. If the unit owners vote not to rebuild any unit, that unit's allocated interests are automatically reallocated upon the vote as if the unit had been condemned under subsection 1 of section 448.1-107, and the association shall promptly prepare, execute, and record an amendment to the declaration reflecting the reallocations. Notwithstanding the provisions of this subsection, section 448.2-118 governs the distribution of insurance proceeds if the condominium is terminated.

9. The provisions of this section may be varied or waived in the case of a condominium all of whose units are restricted to nonresidential use.

(L. 1983 H.B. 177)

**448.3-114. Surplus funds.** — Unless otherwise provided in the declaration, any surplus funds of the association remaining after payment of or provision for common expenses and any prepayment of reserves shall be paid to the unit owners in proportion to their common expense liability or credited to them to reduce their future common expense assessments.

(L. 1983 H.B. 177)

**448.3-115. Assessments for common expenses.** — 1. Until the association makes a common expense assessment, the declarant shall pay all the common expenses. After any assessment has been made by the association, assessments thereafter shall be made at least annually and shall be based on a budget adopted at least annually by the association.

2. Except for assessments under subsections 3 and 4 of this section, all common expenses shall be assessed against all the units in accordance with the allocations set forth in the declaration pursuant to subsection 1 of section 448.2-107. Any past

due common expense assessment or installment thereof shall bear interest at the rate established by the association not exceeding eighteen percent per year.

3. To the extent required by the declaration:

(1) Any common expense associated with the maintenance, repair, or replacement of a limited common element shall be assessed against the units to which that limited common element is assigned, equally, or in any other proportion that the declaration provides;

(2) Any common expense, or portion thereof, benefiting fewer than all of the units shall be assessed exclusively against the units benefited; and

(3) The costs of insurance shall be assessed in proportion to risk and the costs of utilities shall be assessed in proportion to usage.

4. Assessments to pay a judgment against the association shall be made only against the units in the condominium at the time the judgment was entered, in proportion to their common expense liabilities.

5. If any common expense is caused by the misconduct of any unit owner, the association may assess that expense exclusively against his unit.

6. If common expense liabilities are reallocated, common expense assessments and any installment thereof not yet due shall be recalculated in accordance with the reallocated common expense liabilities.

(L. 1983 H.B. 177)

**448.3-116. Lien for assessments.** — 1. The association has a lien on a unit for any assessment levied against that unit or fines imposed against its unit owner from the time the assessment or fine becomes due. The association's lien may be foreclosed in like manner as a mortgage on real estate or a power of sale pursuant to chapter 443, RSMo. Unless the declaration otherwise provides, fees, charges, late charges, fines, and interest charged pursuant to subdivisions (10), (11), and (12) of subsection 1 of section 448.3-102 are enforceable as assessments pursuant to this section. If an assessment is payable in installments, the full amount of the assessment is a lien from the time the first installment thereof becomes due.

2. A lien pursuant to this section is prior to all other liens and encumbrances on a unit except:

Case: 4:19-cv-00669-RWS   Doc. #: 1-3   Filed: 03/27/19   Page: 12 of 69 PageID #: 18

Electronically Filed - St Louis County - February 19, 2019 - 10:16 AM

(1)   Liens and encumbrances recorded before the recordation of the declaration;

(2)   A mortgage and deed of trust for the purchase of a unit recorded before the date on which the assessment sought to be enforced became delinquent;

(3)   Liens for real estate taxes and other governmental assessments or charges against the unit;

(4)   Except for delinquent assessments or fines, up to a maximum of six months' assessments or fines, which are due prior to any subsequent refinancing of a unit or for any subsequent second mortgage interest.

This subsection does not affect the priority of mechanics' or materialmen's liens, or the priority of liens for other assessments made by the association.  The lien pursuant to this section is not subject to the provisions of section 513.475, RSMo.

3.  Unless the declaration provides otherwise, if two or more associations have liens for assessments created at any time on the same real estate, those liens have equal priority.

4.  Recording of the declaration constitutes record notice and perfection of the lien.  No further recordation of any claim of lien for assessment pursuant to this section is required.

5.  A lien for unpaid assessments is extinguished unless proceedings to enforce the lien are instituted within three years after the full amount of the assessments becomes due.

6.  This section shall not prohibit actions to recover sums for which subsection 1 of this section creates a lien, or prohibit an association from taking a deed in lieu of foreclosure.

7.  A judgment or decree in any action brought pursuant to this section shall include costs and reasonable attorney's fees for the prevailing party.

8.  The association shall furnish to a unit owner, upon written request, a recordable statement setting forth the amount of unpaid assessments against the unit owner's unit.  The statement shall be furnished within ten business days after receipt of the request and is binding on the association, the executive board, and every unit owner.

(L. 1983 H.B. 177, A.L. 1993 S.B. 852 & 913)

Effective 1-1-99

448.3-117.   Other liens affecting the condominium. — 1.  A judgment for money against the association, if recorded, is not a lien on the common elements, but is a lien in favor of the judgment lienholder against all of the units in the condominium at the time the judgment was entered.  No other property of a unit owner is subject to the claims of creditors of the association.

2.  Notwithstanding the provisions of subsection 1 of this section, if the association has granted a security interest in the common elements to a creditor of the association pursuant to section 448.3-112, the holder of that security interest shall exercise his right against the common elements before his judgment lien on any unit may be enforced.

3.  Whether perfected before or after the creation of the condominium, if a lien other than a deed of trust or mortgage, including a judgment lien or lien attributable to work performed or materials supplied before creation of the condominium, becomes effective against two or more units, the unit owner of an affected unit may pay to the lienholder the amount of the lien attributable to his unit, and the lienholder, upon receipt of such payment, shall promptly deliver a release of the lien covering that unit.  The amount of the payment shall be proportionate to the ratio which that unit owner's common expense liability bears to the common expense liabilities of all unit owners whose units are subject to the lien.  After payment, the association may not assess or have a lien against that unit owner's unit for any portion of the common expenses incurred in connection with that lien.

4.  A judgment against the association shall be indexed in the name of the condominium and the association and, if so indexed, is notice of the lien against the units.

(L. 1983 H.D. 177)

448.3-118.   Association records. — The association shall keep financial records sufficiently detailed to enable the association to comply with section 448.4-107*.  All financial and other records shall be made reasonably available for examination by any unit owner and his authorized agents.

(L. 1983 H.B 177)

*Original rolls contain section 448.4-107, an apparent typographical error   Uniform Code adopted by Missouri contains section 448.4-109.

Electronically Filed - St. Louis County - February 19, 2019 - 10:16 AM

Book:21596 - Page:3039

# KIRKSHIRE CONDOMINIUM

## RESTATEMENT OF DECLARATION

### SUPERSEDES
### FOURTH AMENDMENT AND RESTATEMENT OF THE KIRKSHIRE CONDOMINIUMS DECLARATION OF CONDOMINIUMS AND BY-LAWS

**St. Louis County, Missouri**

ii



Electronically Filed - St. Louis County - February 19, 2019 - 10:16 AM

# Book:21596 - Page:3040

## KIRKSHIRE CONDOMINIUM
## RESTATEMENT OF DECLARATION

THIS RESTATEMENT is made this __17th__ day of __July__, 2015 by the Kirkshire Condominium Association ("Association").

WITNESSETH THAT:

A.    Kirkshire Condominium ("Condominium") was created under the Missouri Condominium Property Act, Sections 448.005 to 448.210, RSMo. ("CPA") by virtue of "The Kirkshire Condominiums Declaration of Condominium and By-Laws" as recorded on January 24, 1980 in Book 7227, Page 1050, as amended by "First Amendment to and Easement of The Kirkshire Condominiums Declaration of Condominium and By-Laws" recorded on January 23, 1990 in Book 8690, Page 447, the "Restatement of The Kirkshire Condominiums Declaration of Condominiums and By-Laws" recorded on August 29, 1991 in Book 9076, Page 326, the "Third Amendment and Restatement of The Kirkshire Condominiums and By-Laws" recorded on March 7, 2001 in Book 12907, Page 500, and the "Fourth Amendment and Restatement of The Kirkshire Condominiums and By-Laws" recorded on April 3, 2007 in Book 17502, Page 4657, all of the records of St. Louis County, Missouri ("Original Declaration"); and

B.    Certain real property comprising the Condominium was subjected to the CPA by virtue of the Original Declaration; said property is more particularly described and depicted on the condominium plats recorded on January 24, 1980 in Plat Book 122, Page 92 of the records of St. Louis County, Missouri, as may be amended ("Plat"); the legal description of said property is attached hetero as Exhibit "A" and incorporated herein by reference; and

C.    The Original Declaration may be amended by approval of a majority of the owners voting by their percentage interest as provided by Article V, Section 1 of the Original Declaration; and

D.    The Uniform Condominium Act of Missouri, Sections 448.1-101 to 448.4-120, RSMo. ("Act"), effective September 28, 1983, authorizes amendment of the Original Declaration and the Original By-Laws to adopt of any of the Act's provisions so long as such amendment is adopted in conformity with the procedures of said documents; and

E.    The Owners desire to restate the Original Declaration and release said document from the records of St. Louis County, Missouri, and to supersede said document with this Restatement of Declaration effective upon its recording and authorize separate By-Laws that need not be recorded; and

F.    The purposes of this Restatement are to preserve the condominium plan of ownership established under the Original Declaration, to adopt certain provisions of the Act, and to comply with agencies insuring mortgage loans, all for the general health

iii

Electronically Filed - St Louis County - February 19, 2019 - 10:16 AM

## Book:21596 - Page:3052

### ARTICLE V
### MAINTENANCE RESPONSIBILITIES

*Effective maintenance, repair and replacement of the Condominium property are vital to preserving an attractive appearance, components that function properly, and property values in the community. Preventive maintenance is important to minimize damage due to aging plumbing, wastewater, weather proofing and other systems and components. The provisions of this Article allocate the responsibilities for maintenance, repair and replacement to the Association and the individual Owners.*

**5.1   Common Elements.**   The Association, as a Common Expense, is responsible for maintenance, repair and replacement of the Common Elements. The Board has exclusive authority to decide such matters, guided by the Board's business judgment. This responsibility includes and is limited as follows:

(a)   For the exterior walls, fences, roofs, foundations, and other Common Elements of each building, except the Association shall not be obligated to correct water penetration in foundation walls or slab settlement that does not affect structural integrity of the building.

(b)   For the doors, windows, and skylights (if any) in the perimeter boundary of the Units, the Association's responsibility is limited to painting or staining the exterior surface of such items, and caulking and sealing the exterior intersections of such items.

(c)   The Association may provide prevention of termites, limited to the grounds around the buildings by use of a bait system on a community-wide basis. The Association may treat for other pests in the Board's discretion. The Association is not responsible for any damage occurring in a Unit or LCE due to such termites or other pests.

(d)   The Association is not responsible for radon detection or mitigation.

(e)   The Association may be responsible for damage to a Unit or the personal property of an Owner caused by the Common Elements only if and to the extent that such damage was caused by an intentional act or negligent act or omission of the Association.

(f)   The Association is not responsible for damage to personal property located within a storage locker unless such damage was caused by an intentional act of the Association.

**5.2   Units.** Each Owner, at his own expense, is responsible for maintenance, repair and replacement of his Unit as the Unit is defined in Section 4.1. The Owner is responsible for periodic inspection and preventive maintenance of plumbing (including fixtures, seals and other parts), wastewater lines, and HVAC equipment and systems

7

Electronically Filed - St Louis County - February 19, 2019 - 10:16 AM

## Book:21596 - Page:3053

(including filters, drip pans and other parts). An Owner may be responsible for damage to another Unit or to the Common Elements if and to the extent such damage was caused by an intentional act or negligent act or omission of the Owner, or by an occurrence originating in the Unit, regardless of such causation. The Association or an Owner of a damaged Unit may repair such damage pursuant to this provision or may, at its or his option, make a claim under his personal insurance.

**5.3     LCEs by Association.** The Association is responsible for LCEs as follows: (a) mailboxes that serve the Garden Units, (b) patio privacy fences, and (c) such other LCEs as may be assumed by the Association.

**5.4     LCEs by Owners.** Each Owner, at his own expense, is responsible for the maintenance, repair, and replacement of all equipment and systems serving his Unit and other LCEs assigned to his Unit in Sections 4.3 and 4.4 except those that are the Association's responsibility under Section 5.3.

**5.5     Preventive Maintenance.** The Board may establish programs requiring inspection and preventive maintenance of (a) plumbing, (b) wastewater, (c) electrical, (d) heating, ventilation, and cooling systems, (e) weather proofing, (f) chimney, and (h) other systems, equipment, fixtures, and components serving the Units and Common Elements.

**5.6     Association Oversight.** In the event an Owner fails to carry out any maintenance responsibility, the Board, after notice and opportunity to be heard (except in an emergency), may correct such condition and allocate the cost thereof to that Unit as provided in Section 9.3.

### ARTICLE VI
### EASEMENTS

**6.1     Encroachments.** Perpetual easements are established to maintain any encroachment created through construction, settlement or shifting of the building that causes any part of a Common Element or a Unit to encroach upon any Common Element or upon any other Unit. This easement includes the use of the space acquired by the encroachment. This easement shall exist for the benefit of the Owner or the Common Element, as the case may be. No easement shall be created in the event the encroachment is due to an Owner's willful conduct.

**6.2     Easements Appurtenant for Units.** Perpetual easements are established, appurtenant to all Units, for the nonexclusive use of the Common Elements and exclusive use of any LCE allocated to the Unit. If any utility lines, meters or shut-off valves serving a Unit are located in another Unit or an LCE of another Unit, the Owner has a perpetual easement to access such equipment that serves his Unit, and no Owner may obstruct such easement.

8

Electronically Filed - St Louis County - February 19, 2019 - 10:16 AM

## Book:21596 - Page:3054

**6.3    Easements in Gross.** All portions of the Condominium, including the Units, Common Elements, and LCEs, are subject to a perpetual easement in gross to the Association for ingress and egress, to perform its responsibilities under the Governing Documents.

**6.4    Street, Walkway and Utility Easement.** Easements as shown on the Plat have been established and dedicated for walkways, sewers, electricity, gas, water and telephones and for all other public utility purposes, including the right to install, lay, maintain, repair and replace water mains and pipes, sewer lines, drainage, gas mains, telecommunication wires and equipment, and electrical conduits and wires over, under, along and on the Common Elements.

**6.5    Telecommunications.** Easements may be granted across the Common Elements to a service provider to access the Common Elements for telecommunication services to the Units.

**6.6    Effect of Easements.** All easements and rights herein established shall run with the land and inure to the benefit of and be binding on any Owner, tenant, purchaser, holder of a Security Interest or other person having an interest in any portion of the Condominium property herein described, whether or not such easements are mentioned in any deed of conveyance.

## PART THREE: COMMUNITY GOVERNANCE

## ARTICLE VII
## UNIT OWNERS ASSOCIATION

**7.1    Creation.** There shall be a unit owners' association known as the "Kirkshire Condominium Association." The Association shall be organized as a nonprofit corporation under the Missouri Nonprofit Corporation Act, Chapter 355, Mo. Rev Stat. ("NPCA"), and its Articles of Incorporation. If not incorporated or if the corporate status is dissolved, the Association shall operate as an unincorporated association and shall have all the same rights and responsibilities under the Act and Governing Documents.

**7.2    Membership.** Membership in the Association at all times shall consist exclusively of all of the Members or, following condemnation under Section 16.1 or termination under Section 16.2, of all former Members entitled to proceeds under Section 448.2-118 of the Act, or their heirs, successors or assigns. Only a Member in Good Standing may exercise the privileges of membership, including the right to vote, stand for election to the Board, serve on the Board, and utilize any recreation facilities.

**7.3    Management.** The Association is vested with the authority to operate the Condominium.

Electronically Filed - St Louis County - February 19, 2019 - 10:16 AM

# BY-LAWS OF

# KIRKSHIRE CONDOMINIUM
# CONDOMINIUM ASSOCIATION

**Effective July 17, 2015**

Electronically Filed - St Louis County - February 19, 2019 - 10:16 AM

**BY-LAWS**
**of**
**KIRKSHIRE CONDOMINIUM ASSOCIATION**

**TABLE OF CONTENTS**

| | | Page |
|---|---|---|
| **Article One** | **Membership, Office, Applicability, Definitions** | 1 |
| 1.1 | Name | 1 |
| 1.2 | Status | 1 |
| 1.3 | Membership | 1 |
| 1.4 | Office | 1 |
| 1.5 | Applicability | 1 |
| 1.6 | Definitions | 1 |
| **Article Two** | **Association: Meetings, Quorum, Voting, Proxies** | 2 |
| 2.1 | Annual Meetings | 2 |
| 2.2 | Place of Meetings | 2 |
| 2.3 | Special Meetings | 2 |
| 2.4 | Notice of Meetings | 2 |
| 2.5 | Waiver of Notice | 2 |
| 2.6 | Adjournment of Meetings | 2 |
| 2.7 | Voting Procedures | 3 |
| 2.8 | Quorum | 5 |
| 2.9 | Action by Association | 5 |
| **Article Three** | **Board of Directors: Number, Meetings** | 5 |
| 3.1 | Governing Body | 5 |
| 3.2 | Number of Directors | 5 |
| 3.3 | Nomination of Directors | 5 |
| 3.4 | Election of Directors | 5 |
| 3.5 | Term of Directors | 5 |
| 3.6 | Removal of Directors | 5 |
| 3.7 | Vacancies | 6 |
| 3.8 | Organization Meetings | 6 |
| 3.9 | Regular Meetings | 6 |
| 3.10 | Special Meetings | 6 |
| 3.11 | Notice; Waiver of Notice | 6 |
| 3.12 | Quorum and Action of Board | 7 |
| 3.13 | Conduct of Meetings | 7 |
| 3.14 | Compensation | 7 |
| 3.15 | Open Meetings; Executive Session | 7 |
| 3.16 | Executive Committee | 7 |
| 3.17 | Consent to Corporate Action | 7 |
| 3.18 | Conflict of Interest | 7 |
| 3.19 | Training; Code of Ethics | 8 |

-i-

Electronically Filed - St Louis County - February 19, 2019 - 10:16 AM

(1)    Assessments and installments thereof shall bear interest from the due date until payment is received at the rate of 12% per annum, or any other legal rate (not exceeding 18%) adopted by resolution of the Board. If any payment is not received within the time specified by the Board, the Board shall charge a late fee of $50.00 or such other reasonable amount as adopted by resolution of the Board.

(2)    Monthly installments shall be due on the first day of each month and if not received by the 10th day shall be designated as late and a late charge and interest shall attach. A "first late notice" to the Member shall be provided.

(3)    If payment of any monthly installment has not been received within 30 days of the date due, a "second late notice" shall be provided.

(4)    If any monthly installment, or fine imposed after notice and opportunity to be heard, has not been paid within 60 days after the due date, and the delinquent Owner has made no arrangements to pay, the Board may authorize recording a Notice of Lien against the Unit and/or filing a legal action to collect the debt against the Owner, including:

a.    General assessments.
b.    Special assessment (if any).
c.    Late charges.
d.    Interest.
e.    Accelerated unpaid balance of the annual assessment.
f.    Unpaid fines.
g.    Attorney's fees.
h.    Management and other professional fees.
i.    Recording costs.
j.    Other actual expenses incurred.

(5)    Part payments on a delinquent account shall be applied in the following order:

a.    Court costs.
b.    Attorney's fees.
c.    Management and other professional fees.
d.    Administrative costs and other charges incurred.
e.    Oldest amount of general assessments.
f.    Any special assessment.
g.    All late charges accrued.
h.    All interest charges accrued.
i.    Other qualifying expenses, if any.
j.    Amount of accelerated assessment.

Electronically Filed - St. Louis County - February 19, 2019 - 10:16 AM

# Book:19596 - Page:319





*201108 0300343 *

## JANICE M. HAMMONDS, RECORDER OF DEEDS
### ST. LOUIS COUNTY MISSOURI
### 41 SOUTH CENTRAL, CLAYTON, MO 63105

TYPE OF
INSTRUMENT          GRANTOR          TO          GRANTEE
MTGE          ARTHUR GWEN A

PROPERTY
DESCRIPTION:          KIRKSHIRE (THE) CONDOMINIUMS L: 8 PB: 198 PG: 1

| Lien Number | Notation | Locator |
|---|---|---|
|  |  |  |

NOTE: I, the undersigned Recorder of Deeds, do hereby certify that the information shown on this Certification Sheet as to TYPE OF INSTRUMENT, the NAMES of the GRANTOR and GRANTEE as well as the DESCRIPTION of the REAL PROPERTY affected is furnished merely as a convenience only, and in the case of any discrepancy of such information between this Certification Sheet and the attached Document, the ATTACHED DOCUMENT governs. Only the DOCUMENT NUMBER, the DATE and TIME of filing for record, and the BOOK and PAGE of the recorded Document is taken from this CERTIFICATION SHEET.

### RECORDER OF DEEDS DOCUMENT CERTIFICATION

STATE OF MISSOURI )
                                SS.
COUNTY OF ST. LOUIS )

| Document Number |
|---|
| 00343 |

I, the undersigned Recorder of Deeds for said County and State, do hereby certify that the following and annexed instrument of writing, which consists of ___8___ pages, (this page inclusive), was filed for record in my office on the ___3___ day of ___August___ 2011 at 09:01 AM and is truly recorded in the book and at the page number printed above.

In witness whereof I have hereunto set my hand and official seal the day, month and year aforesaid.

MM
Deputy Recorder



Janice M. Hammonds
St. Louis County, Missouri

Mail to:

First American NDTS
3 First American Way
Santa Ana, CA 92707

Destination code:          4002



RECORDING FEE ___42.00___
(Paid at the time of Recording)

Electronically Filed - St Louis County - February 19, 2019 - 10:16 AM

# Book:19596 - Page:320

When Recorded Mail to:
First American Title
Attn: Loss Mitigation Title Services
PO BOX 27670
Santa Ana, CA 92799

Document Prepared by:
TYRAE GRAVES
Midland Mortgage
999 N.W. Grand Boulevard, Suite 100
Oklahoma City, OK 73118-6116
1-800-552-3000

FHA Case Number: 292-4260942734

## SUBORDINATE DEED OF TRUST

THIS SUBORDINATE DEED OF TRUST ("Security Instrument") is made on July 5, 2011. The grantor is GWEN A ARTHUR ("Borrower"). The trustee is the S & W Foreclosure Corporation ("Trustee"). The beneficiary is the Secretary of Housing and Urban Development, which is organized and existing under the laws of the United States of America, and whose address is 451 Seventh Street, SW, Washington, DC 20410 ("Lender"). Borrower owes Lender the principal sum of nine-thousand-two-hundred dollars and seventy-seven cents (US $9,200.77). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for the full debt, if not paid earlier, due and payable on 11/1/2032. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by Note, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums advanced to protect the security of this Security Instrument; and (c) the performance of the Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in ST. LOUIS County, Missouri:

Page 1 of the Subordinate Deed of Trust

Borrower Initial Lines

* Please add the appropriate number of initial lines for each signatory over 4

Electronically Filed - St Louis County - February 19, 2019 - 10:16 AM

# Book:19596 - Page:321

See Exhibit "A" attached hereto and made a part hereof.

Tax ID # 22N241093

which has the address of:   1055 PINEGATE DRIVE   KIRKWOOD, MO   63122("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property.   All replacements and additions shall also be covered by this Security Instrument.   All of the foregoing is referred to in this Security Instrument as the "Property".

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record.   Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS.  Borrower and Lender covenant and agree as follows:

1. Payment of Principal.

   Borrower shall pay when due the principal of the debt evidenced by the Note.

2. Borrower Not Released; Forbearance by Lender Not a Waiver.

   Extension of the time of payment of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

3. Successors and Assigns Bound; Joint and Several Liability; Co-signers.

   The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note:  (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums

Page 2 of the Subordinate Deed of Trust                          Borrower Initial Lines

* Please add the appropriate number of initial lines for each signatory over 4

Electronically Filed - St Louis County - February 19, 2019 - 10:16 AM

# Book:19596 - Page:322

secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the term of this Security Instrument or the note without that Borrower's consent.

4. **Notices.**

Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to: Department of Housing and Urban Development, Attn: Single Family Notes Branch, 451 Seventh Street, SW, Washington, DC 20410 or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

5. **Governing Law; Severability.**

This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end, the provisions of the Security Instrument and the Note are declared to be severable.

6. **Borrower's Copy.**

Borrower shall be given one conformed copy of the Note of this Security Instrument.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

7. **Acceleration; Remedies.**

Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 3 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other

Page 3 of the Subordinate Deed of Trust

Borrower Initial Lines



* Please add the appropriate number of initial lines for each signatory over 4

Electronically Filed - St. Louis County - February 19, 2019 - 10:16 AM

# Book:19596 - Page:323

remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 7, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender or Trustee shall mail copies of a notice of sale in the manner prescribed by applicable law to Borrower and to the other person prescribed by applicable law. Trustee shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Trustee, without demand on Borrower, shall sell the property at public auction to the highest bidder for cash at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property to any later time on the same date by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorney's fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under the paragraph 7 of the Subordinate Note, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 USC 3571 et seq) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to Lender under this paragraph or applicable law.

8. **Release.**

Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

9. **Substitute Trustee.**

Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

Borrower Initial Lines

* Please add the appropriate number of initial lines for each signatory over 4

Electronically Filed - St. Louis County - February 19, 2019 - 10:16 AM

## Book:19596 - Page:324

**10. Lease of the Property.**

Trustee hereby leases the Property to Borrower until the Security Instrument is either satisfied and released or until there is a default under the provisions of this Security Instrument. The Property is leased upon the following terms and conditions: Borrower, and every person claiming an interest in or possessing the Property or any part thereof, shall pay rent during the term of the lease in the amount of one cent per month, payable upon demand, and without notice or demand shall and will surrender peaceable possession of the Property to Trustee upon default or to the purchaser of the Property at the foreclosure sale.

**11. Homestead Exemption.**

Borrower hereby waives all homestead exemptions in the Property to which Borrowers would otherwise be entitled under Applicable Law.

**12. Notice.**

Oral agreements or commitments to loan money, extend credit or to forebear from enforcing repayment of debt including promises to extend or renew such debt are not enforceable. To protect you (Borrower(s)) and us (Creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.

Page 5 of the Subordinate Deed of Trust

Borrower Initial Lines

* Please add the appropriate number of initial lines for each signatory over 4

Electronically Filed - St Louis County - February 19, 2019 - 10:16 AM

## Book:19596 - Page:325

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it. IN WITNESS WHEREOF, Borrower has executed this Security Instrument.

BORROWER

GWEN A ARTHUR                                    Date 7/19/11

Acknowledgement

STATE OF Missouri                          )
                                           ) SS:
COUNTY OF ST. LOUIS                        )

On the 19 day of July, 2011, before me, the undersigned, a notary public in and for said state, personally appeared GWEN A ARTHUR, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument.

In witness whereof, I hereunto set my hand and official seal.

Notary Public

Nick Watson
Printed name of notary

County of Residence: St Louis

Commission Number: 11132960

My Commission Expires: 1/10/15



Page 6 of the Subordinate Deed of Trust

Electronically Filed - St Louis County - February 19, 2019 - 10:16 AM

# Book:19596 - Page:326

Exhibit "A"

UNIT 4 OF THE KIRKSHIRE CONDOMINIUMS, AS PER PLAT THEREOF RECORDED
IN PLAT BOOK 198 PAGES 1 THRU 6 INCLUSIVE OF THE ST. LOUIS COUNTY
RECORDS, TOGETHER WITH THE UNDIVIDED SHARE OF COMMON ELEMENTS AND
APPURTENANCES THERETO BELONGING ALL ACCORDING TO AND MORE
PARTICULARLY DESCRIBED IN THE KIRKSHIRE CONDOMINIUMS DECLARATION
OF CONDOMINIUM AND BY-LAWS DATED AND RECORDED JANUARY 24, 1980 IN BOOK
727 PAGE 1056 AND ALL SUBSEQUENT AMENDMENTS THEREOF.

Page 7 of the Subordinate Deed of Trust

Electronically Filed - St. Louis County - February 19, 2019 - 10:16 AM



BOOK: 17980 - Page: 708



*2008080700251*

## JANICE M. HAMMONDS, RECORDER OF DEEDS
### ST. LOUIS COUNTY MISSOURI
41 SOUTH CENTRAL, CLAYTON, MO 63105

TYPE OF
INSTRUMENT
**ASGMT**

| GRANTOR | TO | GRANTEE |
|---|---|---|
| FIRST TENNESSEE BANK NA | | MIDFIRST BANK |

PROPERTY
DESCRIPTION:     KIRKSHIRE (THE) CONDOMINIUMS L: 8 PB: 198 PG: 1

| Lien Number | Notation | Locator |
|---|---|---|
| | X | |

NOTE: I, the undersigned Recorder of Deeds, do hereby certify that the information shown on this Certification Sheet as to the **TYPE OF INSTRUMENT**, the **NAMES** of the **GRANTOR** and **GRANTEE** as well as the **DESCRIPTION** of the **REAL PROPERTY** affected is furnished merely as a convenience only, and in the case of any discrepancy of such information between this Certification Sheet and the attached Document, the **ATTACHED DOCUMENT** governs. Only the DOCUMENT NUMBER, the DATE and TIME of filing for record, and the **BOOK** and **PAGE** of the recorded Document is taken from this CERTIFICATION SHEET.

### RECORDER OF DEEDS DOCUMENT CERTIFICATION

**STATE OF MISSOURI  )**
                                SS.
**COUNTY OF ST. LOUIS )**

| Document Number |
|---|
| 00251 |

I, the undersigned Recorder of Deeds for said County and State, do hereby certify that the following and annexed instrument of writing, which consists of ____4____ pages, (this page inclusive), was filed for record in my office on the ___7___ day of ___August___ 2008 at _08:47AM_ and is truly recorded in the book and at the page number printed above.

In witness whereof I have hereunto set my hand and official seal the day, month and year aforesaid.

JDK
Deputy Recorder



Janice M. Hammonds
St. Louis County, Missouri



EXHIBIT
5

Mail to:

| NATIONWIDE |
|---|
| |

Destination code:  VC  M

RECORDING FEE _30.00_
(Paid at the time of Recording)

Electronically Filed - St Louis County - February 19, 2019 - 10:16 AM

**Book: 17980 - Page: 709**

Prepared By/Return To:
FIRST HORIZON HOME LOANS
C/O NTC 2100 Alt. 19 North
Palm Harbor, FL 34683
MidFirst L#: 52536122
Investor/Pool: GNMA 589539
First Horizon L#: 0030924294

Assignment of Mortgage/Deed of Trust

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, (GRANTOR) FIRST HORIZON HOME LOANS, A DIVISION OF FIRST TENNESSEE BANK NATIONAL ASSOCIATION, AS SUCCESSOR IN INTEREST BY MERGER TO FIRST HORIZON HOME LOAN CORPORATION, WHOSE ADDRESS IS 1555 W. WALNUT HILL LN , IRVING, TX 75038, (ASSIGNOR), by these presents does convey, grant, sell, assign, transfer andset over the described mortgage/deed of trust together with the certain note(s)described therein together with all interest secured thereby, all liens, and any rights due or to become due thereon to (GRANTEE) MIDFIRST BANK, WHOSE ADDRESS IS 999 N.W. GRAND BOULEVARD SUITE 100, OKLAHOMA CITY, OK 73118, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE).

Said mortgage/deed of trust dated 10/25/2002 , executed by: GWEN A. ARTHUR  and recorded in the Recorder's Office of  ST. LOUIS County, Missouri in Book 14324  Page 1816  Instr# 1232      on the property as described in said Mortgage/Deed of Trust, to wit: Legal: SEE EXHIBIT "A" ATTACHED
commonly known as: 1055 PINEGATE DRIVE      KIRKWOOD, MO 63122

Executed THIS 11TH DAY OF JUNE IN THE YEAR 2008
FIRST HORIZON HOME LOANS, A DIVISION OF FIRST TENNESSEE BANK NATIONAL ASSOCIATION, AS SUCCESSOR IN INTEREST BY MERGER TO FIRST HORIZON HOME LOAN CORPORATION

BY:_____
     CRYSTAL MOORE  LIMITED VICE PRESIDENT

form5/FRMMOL1

Electronically Filed - St Louis County - February 19, 2019 - 10:16 AM

BOOK: 17980 - Page: `710

- Loan number: 0030924294

On THIS 11TH DAY OF JUNE IN THE YEAR 2008 before me, the undersigned, a notary public in and for said County and State, appeared CRYSTAL MOORE , to me personally known, who being by me duly sworn, did say that s/he was the LIMITED VICE PRESIDENT of the aforementioned GRANTOR, a corporation, and that said instrument was executed on behalf of said corporation by authority of its board of directors, and said CRYSTAL MOORE acknowledged said instrument to be the free act and deed of said corporation. Witness my hand and Notarial Seal subscribed and affixed in said County and State THIS 11TH DAY OF JUNE IN THE YEAR 2008

BRYAN J. BLY   Notary Public/ Commission expires: 07/01/2011

FHHMF 8627112   2008-05BULK CJ1846617   formS/FRM4OL1



Electronically Filed - St Louis County - February 19, 2019 - 10:16 AM

BOOK: 17980 - Page: 711

Loan No: 0030924294

'EXHIBIT A'

Legal: UNIT 8 OF THE KIRKSHIRE CONDOMINIUMS, AS PER PLAT
THEREOF RECORDED IN PLAT BOOK 198 PAGES 1 THRU 6 INCLUSIVE OF
THE ST. LOUIS COUNTY RECORDS, TOGETHER WITH THE UNDIVIDED
SHARE OF COMMON ELEMENTS AND APPURTENANCES THERETO BELONGING
ALL ACCORDING TO AND MORE PARTICULARLY DESCRIBED IN THE
KIRKSHIRE CONDOMINIUMS DECLARATION OF CONDOMINIUM AND BY-LAWS
DATED AND RECORDED JANUARY 24, 1980 IN BOOK 7227 PAGE 1050 AND
ALL SUBSEQUENT AMENDMENTS THEREOF.

Electronically Filed - St. Louis County - February 19, 2019 - 10:16 AM





*2002111801232*

**JANICE M. HAMMONDS, RECORDER OF DEEDS**
**ST. LOUIS COUNTY MISSOURI**
**41 SOUTH CENTRAL, CLAYTON, MO 63105**

| | | | |
|---|---|---|---|
| TYPE OF INSTRUMENT **DT** | GRANTOR **ARTHUR GWEN A** | TO | GRANTEE **FIRST HORIZON HOME LOAN CORP** |

PROPERTY DESCRIPTION: KIRKSHIRE CONDOS UNIT 8 PB 198 PG 1

| Lien Number | Notation | Locator |
|---|---|---|

NOTE: I, the undersigned Recorder of Deeds, do hereby certify that the information shown on this Certication Sheet as to the TYPE OF INSTRUMENT, the NAMES of the GRANTOR and GRANTEE as well as the DESCRIPTION of the REAL PROPERTY affected is furnished merely as a convenience only, and in the case of any discrepancy of such information between this Certification Sheet and the attached Document, the ATTACHED DOCUMENT governs. Only the DOCUMENT NUMBER, the DATE and TIME of filing for record, and the BOOK and PAGE of the recorded Document is taken from this CERTIFICATION SHEET.

**RECORDER OF DEEDS DOCUMENT CERTIFICATION**

STATE OF MISSOURI )
                    SS.
COUNTY OF ST. LOUIS )

| Document Number |
|---|
| **1,232** |

I, the undersigned Recorder of Deeds for said County and State, do hereby certify that the following and annexed instrument of writing, which consists of __14 \ 12__ pages, (this page inclusive), was filed for record in my office on the __18__ day of __November__ __2002__ at __01:53 PM__ and is truly recorded in the book and at the page shown at the top and/or bottom of this page.

In witness whereof I have hereunto set my hand and official seal the day, month and year aforesaid.

_Deputy Recorder_

____ N.P
____ N.P.C
____ N.N.C.
____ N.N.I.

_Janice M. Hammonds_
Recorder of Deeds
St. Louis County, Missouri

RECORDING FEE ___$50.00___
(Paid at the time of Recording)

Mail to:

Destination code: 13      P

**EXHIBIT**
**6**

B-14324 P-1816/1827

Electronically Filed - St Louis County - February 19, 2019 - 10:16 AM



———————————————— [Space Above this Line for Recording Data] ————————————————

0030924294

Title(s) of Document:

DEED OF TRUST

Date of Document:

October 25th, 2002

Grantor(s):
GWEN A ARTHUR

Grantor's Address:
1055 PINEGATH DRIVE
KIRKWOOD, MO 63122

Grantee(s):

First Horizon Home Loan Corporation

Grantee's Address:

4000 Horizon Way, Irving, Texas 75063

Full Legal Description is located on page: P 2

Reference Book(s) and Page(s), if required:

MO Indexing Coversheet - 11/01

-888C(MO)   (0110)
VMP MORTGAGE FORMS - (800)521-7291

110528

Electronically Filed - St Louis County - February 19, 2019 - 10:16 AM

Full legal description located on page    02

[Space Above This Line For Recording Data]

State of Missouri

# DEED OF TRUST

FHA Case No.

292-4260942/734

0030924294

THIS DEED OF TRUST ("Security Instrument") is made on  October 25th, 2002
The Grantor is   GWEN A ARTHUR, AN UNMARRIED MAN   WOMAN   GA

("Borrower")

whose address is   1055 PINEGATE DRIVE, KIRKWOOD, Missouri 63122

The trustee is   THOMAS P. DIXON
250 NE MULBERRY, SUITE 201, LEES SUMMIT, MO 64086

("Trustee"). The beneficiary is FIRST HORIZON HOME LOAN CORPORATION

which is organized and existing under the laws of   THE STATE OF KANSAS                         , and
whose address is   4000 Horizon Way, IRVING, TX 75063
("Lender"). Borrower owes Lender the principal sum of

ONE HUNDRED THREE THOUSAND SIX HUNDRED FIFTEEN & 00/100
Dollars (U.S. $    103,615.00    ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which
provides for monthly payments, with the full debt, if not paid earlier, due and payable on   November 1st,
2032        . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the
Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with

FHA Missouri Deed of Trust - 4/96
4R(MO) (9610)
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 8                          Initials: GA



Electronically Filed - St Louis County - February 19, 2019 - 10:16 AM

interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to the Trustee, in trust, with power of sale, the following described property located in St. Louis County, Missouri:

UNIT 8 OF THE KIRKSHIRE CONDOMINIUMS, AS PER PLAT THEREOF RECORDED IN PLAT BOOK 193 PAGES 1 THRU 6 INCLUSIVE OF THE ST. LOUIS COUNTY RECORDS, TOGETHER WITH THE UNDIVIDED SHARE OF COMMON ELEMENTS AND APPURTENANCES THERETO BELONGING ALL ACCORDING TO AND MORE PARTICULARLY DESCRIBED IN THE KIRKSHIRE CONDOMINIUMS DECLARATION OF CONDOMINIUM AND BY-LAWS DATED AND RECORDED JANUARY 26, 1980 IN BOOK 727 PAGE 1050 AND ALL SUBSEQUENT AMENDMENTS THEREOF.

which has the address of 1055 PINEGATE DRIVE                                            [Street]
KIRKWOOD                          [City] Missouri        63122        [Zip Code] ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

1. Payment of Principal, Interest and Late Charge. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. Monthly Payment of Taxes, Insurance and Other Charges. Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

0030924294

(Rev. 4R(MO) (9210)                                  Page 2 of 8                                  Initials: CA

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for Items (a), (b), and (c).

3. Application of Payments. All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

4. Fire, Flood and Other Hazard Insurance. Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property.

0030924294

4G-4R(MO) (9210)

Page 5 of 8

Initials: 

Electronically Filed - St Louis County - February 19, 2019 - 10:16 AM

Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. **Fees.** Lender may collect fees and charges authorized by the Secretary.

9. **Grounds for Acceleration of Debt.**

    (a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

        (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

        (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

    (b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

Electronically Filed - St Louis County - February 19, 2019 - 10:16 AM

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) No Waiver. If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) Regulations of HUD Secretary. In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) Mortgage Not Insured. Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. Reinstatement. Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

0030924294

4R(MO) (0209)

Initials:

Electronically Filed - St Louis County - February 19, 2019 - 10:16 AM

13. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. **Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

Electronically Filed - St Louis County - February 19, 2019 - 10:16 AM

18. **Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender or Trustee shall mail copies of a notice of sale in the manner prescribed by applicable law to Borrower and to the other persons prescribed by applicable law. Trustee shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property to any later time on the same date by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

19. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

20. **Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

21. **Lease of the Property.** Trustee hereby leases the Property to Borrower until this Security Instrument is either satisfied and released or until there is a default under the provisions of this Security Instrument. The Property is leased upon the following terms and conditions: Borrower, and every person claiming an interest in or possessing the Property or any part thereof, shall pay rent during the term of the lease in the amount of one cent per month, payable on demand, and without notice or demand shall and will surrender peaceable possession of the Property to Trustee upon default or to the purchaser of the Property at the foreclosure sale.

22. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

[x] Condominium Rider                [ ] Growing Equity Rider            [ ] Other [specify]
[ ] Planned Unit Development Rider   [ ] Graduated Payment Rider

0030924294

GDI-4R(MO) (9810)                        Page 7 of 8

Electronically Filed - St. Louis County - February 19, 2019 - 10:16 AM

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                                                    GWEN A ARTHUR                    -Borrower

_____          _____ (Seal)
                                                                                                            -Borrower

_____ (Seal)   _____ (Seal)
                                              -Borrower                                              -Borrower

_____ (Seal)   _____ (Seal)
                                              -Borrower                                              -Borrower

_____ (Seal)   _____ (Seal)
                                              -Borrower                                              -Borrower

STATE OF MISSOURI,                          ST. LOUIS                          County ss:

On this   25th   day of   October   ,   2002   , before me personally
appeared   GWEN A ARTHUR ,an unmarried woman

to me known to be the person(s) described in and who executed the foregoing instrument, and acknowledged that
he/she/they executed the same as his/her/their free act and deed.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal in the
County                     and State aforesaid, the day and year first above written.

My Term Expires:                            _____
                                            Notary Public

AFTER RECORDING PLEASE RETURN TO:
FHHLC-POST CLOSING MAIL ROOM
10741 KING WILLIAM MAIL CODE - 6708
DALLAS, TX 75220

PREPARED BY:                                ┌─────────────────────────────┐
FIRST HORIZON HOME LOAN CORPORATION         │           LISA ORF          │
11775 BORMAN DR., SUITE 340                 │  Notary Public - Notary Seal│
ST. LOUIS, MO  63146                        │      STATE OF MISSOURI      │
                                            │      St. Louis County       │
0030924294                                  │My Commission Expires: Dec. 20, 2004│
     -6R(MO) (0210)                         └─────────────────────────────┘
                          Page 8 of 8

Electronically Filed - St Louis County - February 19, 2019 - 10:16 AM

0030924294

FHA Case No.
292-4260942/734

# CONDOMINIUM RIDER

THIS CONDOMINIUM RIDER is made this ____25th____ day of ___October___ , 2002 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to

FIRST HORIZON HOME LOAN CORPORATION

("Lender") of the same date and covering the Property described in the Security Instrument and located at:

1055 PINEGATE DRIVE, KIRKWOOD, MO 63122

[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements of, a condominium project known as:

KIRKSHIRE CONDOMINIUMS

[Name of Condominium Project]

("Condominium Project"). If the owners association or other entity which acts for the Condominium Project ("Owners Association") holds title to property for the benefit or use of its members or shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds and benefits of Borrower's interest.

CONDOMINIUM COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring all property subject to the condominium documents, including all improvements now existing or hereafter erected on the Property, and such policy is satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and other hazards included within the term "extended coverage," and loss by flood, to the extent required by the Secretary, then: (i) Lender waives the provision in Paragraph 2 of this Security Instrument for the monthly payment to Lender of one-twelfth of the yearly premium installments for hazard insurance on the Property, and (ii) Borrower's obligation under Paragraph 4 of this Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy. Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the condominium unit or to the common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

FHA Multistate Condominium Rider - 10/95

-699 (9601)  D06D102

VMP MORTGAGE FORMS - (800)521-7291

Page 1 of 2        Initials: 

Electronically Filed - St Louis County - February 19, 2019 - 10:16 AM

B. Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the Condominium Project.

C. If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Condominium Rider.

_____ (Seal)          _____ (Seal)
GWEN A ARTHUR                  -Borrower                                          -Borrower

_____ (Seal)          _____ (Seal)
                              -Borrower                                          -Borrower

_____ (Seal)          _____ (Seal)
                              -Borrower                                          -Borrower

_____ (Seal)          _____ (Seal)
                              -Borrower                                          -Borrower

-8U -8U (9601)                          Page 2 of 2

U06D103

Electronically Filed - St. Louis County - February 19, 2019 - 10:16 AM



BOOK: 17600 - Page: 389



\* 2 0 0 7 0 7 0 2 0 0 7 4 0 \*

## JANICE M. HAMMONDS, RECORDER OF DEEDS
### ST. LOUIS COUNTY MISSOURI
### 41 SOUTH CENTRAL, CLAYTON, MO 63105

| TYPE OF INSTRUMENT | GRANTOR | TO | GRANTEE |
|---|---|---|---|
| DT | ARTHUR GWEN A | | VANTAGE CREDIT UNION |

PROPERTY DESCRIPTION: KIRKSHIRE UNIT 8 PB 198 PG 1

| Lien Number | Notation | Locator |
|---|---|---|

NOTE: I, the undersigned Recorder of Deeds, do hereby certify that the information shown on this Certication Sheet as to the **TYPE OF INSTRUMENT**, the **NAMES** of the **GRANTOR** and **GRANTEE** as well as the **DESCRIPTION** of the **REAL PROPERTY** affected is furnished merely as a convenience only, and in the case of any discrepancy of such information between this Certification Sheet and the attached Document, the **ATTACHED DOCUMENT** governs. Only the **DOCUMENT NUMBER**, the **DATE** and **TIME** of filing for record, and the **BOOK** and **PAGE** of the recorded Document is taken from this **CERTIFICATION SHEET.**

### RECORDER OF DEEDS DOCUMENT CERTIFICATION

STATE OF MISSOURI )
                SS.
COUNTY OF ST. LOUIS )

Document Number
**740**

I, the undersigned Recorder of Deeds for said County and State, do hereby certify that the following and annexed instrument of writing, which consists of _____ 7 _____ pages, (this page inclusive), was filed for record in my office on the ___ 2 ___ day of ___ July ___ 2007 at ___ 11:38 AM ___ and is truly recorded in the book and at the page number printed above.

In witness whereof I have hereunto set my hand and official seal the day, month and year aforesaid.

Deputy Recorder

Janice M. Hammonds
Recorder of Deeds
St. Louis County, Missouri

Mail to:

N.P.
N.P.C.
N.N.C.
N.N.I.

EXHIBIT
7

Destination code: 3     P

RECORDING FEE ___ $39.00 ___
(Paid at the time of Recording)

Electronically Filed - St Louis County - February 19, 2019 - 10:16 AM



BOOK: 17600 - Page: 390

[Space Above This Line For Recording Data]

# DEED OF TRUST

15- 61

THIS DEED OF TRUST ("Security Instrument") is made on  02/05/2007
The grantor is
**GWEN A. ARTHUR, A SINGLE PERSON**

("grantor means Borrower").

The Trustee is  Hubert Hoosman, Jr.                                    ("Trustee").
The grantee is  Vantage Credit Union                          ,which is organized and existing
under the laws of  Missouri                                          , and whose address is
        4020 Fee Fee Rd., Bridgeton, MO   63044      ("grantee means Lender").
Borrower owes Lender the principal sum of   sixty thousand and xx / 100

Dollars (U.S. $  60,000.00        ). This debt is evidenced by Borrower's note dated the same date as this
Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and
payable on   **FEBRUARY SEVENTEENTH**      2017. This Security Instrument secures to Lender: (a) the
repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the
Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this
Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security
Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power
of sale, the following described property located in    ST LOUIS                 County, Missouri:
UNIT 8 OF THE KIRKSHIRE CONDOMINIUMS, AS PER PLAT THEREOF RECORDED IN PLAT BOOK
198 PAGES 1 THRU 6 INCLUSIVE OF THE ST. LOUIS COUNTY RECORDS, TOGETHER WITH THE
UNDIVIDED SHARE OF COMMON ELEMENTS AND APPURTENANCES THERETO BELONGING ALL
ACCORDING TO AND MORE PARTICUARLY DESCRIBED IN THE KIRKSHIRE CONDOMINIUMS
DECLARATION OF CONDOMINIUM AND BY-LAWS DATED AND RECORDED JANUARY 24, 1980 IN
BOOK 7227 PAGE 1050 AND ALL SUBSEQUENT AMENDMENTS THEREOF

which has the address of   1055 PINEGATE DRIVE                  ST LOUIS
                           [Street]                      [City]

Missouri     63122          ("Property Address");
        [Zip Code]

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements,
appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be
covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

(page 1 of 6 pages)

61463L

Electronically Filed - St Louis County - February 19, 2019 - 10:16 AM

BOOK: 17600 - Page: 391

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the Federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

(page 2 of 6 pages)

Electronically Filed - St Louis County - February 19, 2019 - 10:16 AM

BOOK: 17600 - Page: 392

5. **Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

7. **Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

8. **Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance

(page 3 of 6 pages)

Electronically Filed - St Louis County - February 19, 2019 - 10:16 AM

BOOK: 17608 - Page: 385

premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect, Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

9. Inspection. Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

10. Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

11. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification or amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. Successors and Assigns Bound; Joint and Several Liability; Co-signers. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. Loan Charges. If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

14. Notices. Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

15. Governing Law; Severability. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

16. Borrower's Copy. Borrower shall be given one conformed copy of the Note and of this Security Instrument.

(page 4 of 6 pages)

BOOK: 17660 - Page: 394

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, material containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**21. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender or Trustee shall mail copies of a notice of sale in the manner prescribed by applicable law to Borrower and to the other persons prescribed by applicable law. Trustee shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property to any later time on the same date by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

(page 5 of 6 pages)

Electronically Filed - St. Louis County - February 19, 2019 - 10:16 AM

BOOK: 17600 - Page: 395

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

22. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

23. Substitute Trustee. Lender, at its option, may from time to time remove trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is Recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

24. Lease of the Property. Trustee hereby leases the Property to Borrower until this Security Instrument is either satisfied and released or until there is a default under the provisions of this Security Instrument. The Property is leased upon the following terms and conditions: Borrower, and every person claiming an interest in or possessing the Property or any part thereof, shall pay rent during the term of the lease in the amount of one cent per month, payable on demand, and without notice or demand shall and will surrender peaceable possession of the Property to Trustee upon default or to the purchaser of the Property at the foreclosure sale.

25. Riders to this Security Instrument. If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)]

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ 1-4 Family Rider |
| ☐ Graduated Payment Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ Balloon Rider | ☐ Rate Improvement Rider | ☐ Second Home Rider |
| ☐ Other(s) [specify] | | |

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 5 of this Security Instrument.

Witness:

_____
Tim Butts

Witness:

_____ (Seal)
GWEN A. ARTHUR                     -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

STATE OF MISSOURI,

CO of St Louis   ss:

On this FIFTH day of FEBRUARY 2007 before me personally appeared
GWEN A. ARTHUR, A SINGLE PERSON

to me known to
be the person(s) described in and who executed the foregoing instrument, and acknowledged that SHE
executed the same as HER                     free act and deed.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal in the County and State aforesaid, the day and year first above written.

My term expires: 6/6/2009

_____
Notary Public

AMBER P. JOHNSON
Notary Public - Notary Seal
STATE OF MISSOURI
City of St. Louis
Commission # 05717232
My commission expires June 5, 2009

Copyright Oak Tree Business Systems, Inc. 1997 All Rights Reserved

OTBS 093A MO (11/97)
(page 6 of 6 pages)

Electronically Filed - St. Louis County - February 19, 2019 - 10:16 AM

# Book:23384 - Page:1103





\* 2 0 1 9 0 2 0 4 0 0 2 0 0 \*

## GERALD E. SMITH, RECORDER OF DEEDS
### ST. LOUIS COUNTY MISSOURI
### 41 SOUTH CENTRAL, CLAYTON, MO 63105

TYPE OF
INSTRUMENT
NOLN

GRANTOR
ARTHUR GWEN A

TO

GRANTEE
KIRKSHIRE CONDOMINIUM ASSN

PROPERTY
DESCRIPTION:        KIRKSHIRE (THE) CONDOMINIUMS L: 8 PB: 198 PG: 1

| Lien Number | Notation | Locator |
|---|---|---|

NOTE: I, the undersigned Recorder of Deeds, do hereby certify that the information shown on this Certification Sheet as to TYPE OF INSTRUMENT, the NAMES of the GRANTOR and GRANTEE as well as the DESCRIPTION of the REAL PROPERTY affected is furnished merely as a convenience only, and in the case of any discrepancy of such information between this Certification Sheet and the attached Document, the ATTACHED DOCUMENT governs. Only the DOCUMENT NUMBER, the DATE and TIME of filing for record, and the BOOK and PAGE of the recorded Document is taken from this CERTIFICATION SHEET.

### RECORDER OF DEEDS DOCUMENT CERTIFICATION

STATE OF MISSOURI   )
                              SS.
COUNTY OF ST. LOUIS )

| Document Number |
|---|
| 00200 |

I, the undersigned Recorder of Deeds for said County and State, do hereby certify that the following and annexed instrument of writing, which consists of ____3____ pages, (this page inclusive), was filed for record in my office on the ___4___ day of ___February___ _2019_ at _10:33AM_ and is truly recorded in the book and at the page number printed above.

In witness whereof I have hereunto set my hand and official seal the day, month and year aforesaid.

PC
Deputy Recorder



Gerald E. Smith
Recorder of Deeds
St. Louis County, Missouri

Mail to:

Gateway Law STL LLC (E)
3407 S Jefferson #106
St Louis, MO 63118

Destination code:      4000



EXHIBIT
8

RECORDING FEE ___27.00___
(Paid at the time of Recording)

Electronically Filed - St. Louis County - February 19, 2019 - 10:16 AM

# Book:23384 - Page:1104

NOTICE OF LIEN
FOR COMMON EXPENSES TO UNIT OWNERS
FROM KIRKSHIRE CONDOMINIUM ASSOCIATION
A Missouri nonprofit corporation
(Section 448.3-116 Mo. Rev. Stat.)

**Grantor:** Gwen A. Arthur
1055 Pinegate Drive, St. Louis, MO 63122

**Grantee:** Kirkshire Condominium Association, c/o Gateway Law STL, Attn.: Sarah M. Bueltmann, Attorney at Law, 3407 S. Jefferson Ave., #106, St. Louis, MO 63118

**Property Address:** 1055 Pinegate Drive, St. Louis, MO 63122

**Legal Description:** Unit 8 of the Kirkshire Condominiums, as per plat thereof recorded in Plat Book 198 Pages 1 thru 6 inclusive of the St. Louis County Records, together with the undivided share of common elements and appurtenances thereto belonging all according to and more particularly described in the Kirkshire Condominiums Declaration of Condominium and By-Laws dated and recorded January 24, 1980 in Book 7227 Page 1050 and all subsequent amendments thereof.

**Date:** January 28, 2019

TAKE NOTICE that the Board of Managers of Kirkshire Condominium Association, a Missouri nonprofit corporation, claims a lien against Unit 8 of Kirkshire Condominiums, commonly known and numbered as 1055 Pinegate Drive, St. Louis, MO 63122, together with all appurtenances of the said unit, including, but not limited to, the undivided share of the common elements appurtenant thereto, all according to and more particularly described in the Kirkshire Condominiums Declaration of Condominium and By-Laws as may be amended and exhibits thereto filed in the Office of the Recorder of Deeds in St. Louis County Missouri in Book 7227, Page 1050 for the delinquent assessments of the proportionate share of common expenses incurred by the association for the administration, repair and maintenance of the common grounds, plus late fees, interest, recording charges and attorney's fees in connection therewith, all to the benefit of and for all unit owners:

**The total claim of this lien as of the above date is $9,994.11.**

Assessments

Electronically Filed - St. Louis County - February 19, 2019 - 10:16 AM

## Book:23384 - Page:1105

| | |
|---|---|
| (January 2018 – December 2018 @ $323.00/month) | $3,876.00 |
| (January 2019 @ $352.00/month) | $ 352.00 |
| Remaining Assessments | |
| (February 2019 – December 2019 @ $352.00/month) | $3,872.00 |
| Late Fees | $ 300.00 |
| Recording Fees | $ 59.00 |
| Cost for Title Report | $ 250.00 |
| Credits | $ (119.70) |
| Interest (@ 12% per annum) | $ 279.81 |
| Attorney's Fees | $1,125.00 |
| **TOTAL** | **$9,994.11** |

**This is an ongoing lien for assessments, fines, fees, interest & attorney's fees.**

The foregoing information is deemed reliable as of the above date; however, additional sums may accrue thereafter. To obtain a payoff figure, including all costs, contact the Association at the address indicated below.

Board of Managers
Kirkshire Condominium Association,
a Missouri nonprofit corporation

By: _____
Kim Clanahan, Community Manager

STATE OF MISSOURI   )
                    )  SS.
COUNTY OF ST. LOUIS )

On this 29th day of January 2019, before me, Jodi Rovelto a notary public, personally appeared Kim Clanahan, Community Manager, on behalf of Kirkshire Condominium Association, a Missouri nonprofit corporation, which has no seal, known to me to be the person whose name is subscribed to the within instrument and acknowledged that he/she executed the same for the purpose therein contained in witness thereof, I hereunto set my hand and official seal.

_____
Notary Public

My Commission Expires: 07·28·20

JODI G. ROVELTO
My Commission Expires
July 28, 2020
St. Charles County
Commission #12379748

All inquiries must be made to Kirkshire Condominium Association., c/o Gateway Law STL, Attn: Sarah M. Bueltmann, Attorney at Law, 3407 S. Jefferson Ave., #106, St. Louis, MO 63118, (314) 529-0717.



## IN THE 21ST JUDICIAL CIRCUIT COURT, ST. LOUIS COUNTY, MISSOURI

| Judge or Division:<br>JOSEPH L. WALSH III | Case Number:  19SL-CC00743 |
|---|---|
| Plaintiff/Petitioner:<br>KIRKSHIRE CONDOMINIUM ASSOCIATION<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address:<br>SARAH MARIE BUELTMANN<br>3407 SOUTH JEFFERSON<br>SUITE 106<br>SAINT LOUIS, MO  63118 |
| Defendant/Respondent:<br>GWEN ARTHUR | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO  63105 |
| Nature of Suit:<br>CC Foreclosure | |

(Date File Stamp)

## Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

The State of Missouri to:  MIDFIRST BANK SERVICES IN.
Alias:
MIDFIRST BANK CORPORATE OFFICE
999 NORTH WEST GRAND BLVD.
OKLAHOMA CITY, OK  73118

*COURT SEAL OF*



*ST. LOUIS COUNTY*

  You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the Plaintiff/Petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service.  If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.
  SPECIAL NEEDS:  If you have special needs addressed by the Americans With Disabilities Act, please notify the Office of the Circuit Clerk at 314-615-8029, FAX 314-615-8739, email at SLCADA@courts.mo.gov, or through Relay Missouri by dialing 711 or 800-735-2966, at least three business days in advance of the court proceeding.

<u>26-FEB-2019</u>
**Date**
**Further Information:**
**GJ**

_____
Clerk

### Officer's or Server's Affidavit of Service

I certify that:
1.  I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2.  My official title is _____ of _____ County, _____ (state).
3.  I have served the above summons by: (check one)
    ☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
    ☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____, a person of the Defendant's/Respondent's family over the age of 15 years who permanently resides with the Defendant/Respondent.

    ☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to _____ (name) _____ (title).
    ☐ other (describe) _____
Served at _____ (address)
in _____ County, _____ (state), on _____ (date) at _____ (time).

_____          _____
Printed Name of Sheriff or Server                    Signature of Sheriff or Server
**Subscribed and Sworn To** me before this _____ (day) _____ (month) _____ (year)
I am: (check one)  ☐ the clerk of the court of which affiant is an officer.
                              ☐ the judge of the court of which affiant is an officer.
*(Seal)*                   ☐ authorized to administer oaths in the state in which the affiant served the above summons.
                                 (use for out-of-state officer)
                              ☐ authorized to administer oaths.  (use for court-appointed server)

_____
Signature and Title

| Service Fees, if applicable | | |
|---|---|---|
| Summons | $_____ | |
| Non Est | $_____ | |
| Mileage | $_____ | (_____miles @ $ _____ per mile) |
| Total | $_____ | |

See the following page for directions to clerk and to officer making return on service of summons.

### Directions to Officer Making Return on Service of Summons

A copy of the summons and a copy of the motion and/or petition must be served on each Defendant/Respondent.  If any Defendant/Respondent refuses to receive the copy of the summons and motion and/or petition when offered to him, the return shall be prepared to show the offer of the officer to deliver the summons and motion and/or petition and the Defendant's/Respondent's refusal to receive the same.

Service shall be made:  (1) On Individual.  On an individual, including an infant or incompetent person not having a legally appointed guardian, by delivering a copy of the summons and motion and/or petition to the individual personally or by leaving a copy of the summons and motion and/or petition at the individual's dwelling house or usual place of abode with some person of the family over 15 years of age, or by delivering a copy of the summons and motion and/or petition to an agent authorized by appointment or required by law to receive service of process; (2) On Guardian.  On an infant or incompetent person who has a legally appointed guardian, by delivering a copy of the summons and motion and/or petition to the guardian personally; (3)  On Corporation, Partnership or Other Unincorporated Association.  On a corporation, partnership or unincorporated association, by delivering a copy of the summons and motion and/or petition to an officer, partner, or managing or general agent, or by leaving the copies at any business office of the Defendant/Respondent with the person having charge thereof or by delivering copies to its registered agent or to any other agent authorized by appointment or required by law to receive service of process; (4) On Public or Quasi-Public Corporation or Body.  On a public, municipal, governmental or quasi-public corporation or body in the case of a county, to the mayor or city clerk or city attorney in the case of a city, to the chief executive officer in the case of any public, municipal, governmental, or quasi-public corporation or body or to any person otherwise lawfully so designated.

Service may be made by an officer or deputy authorized by law to serve process in civil actions within the state or territory where such service is made.

Service may be made in any state or territory in the United States.  If served in a territory, substitute the word "territory" for the word "state."

The officer making the service must swear an affidavit before the clerk, deputy clerk, or judge of the court of which the person is an officer or other person authorized to administer oaths.  This affidavit must state the time, place, and manner of service, the official character of the affiant, and the affiant's authority to serve process in civil actions within the state or territory where service is made.

Service must not be made less than ten days nor more than sixty days from the date the Defendant/Respondent is to appear in court.  The return should be made promptly, and in any event so that it will reach the Missouri Court within 30 days after service.

**THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI**

Twenty First Judicial Circuit

**NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES**

<u>**Purpose of Notice**</u>

As a party to a lawsuit in this court, you have the right to have a judge or jury decide your case. However, most lawsuits are settled by the parties before a trial takes place. This is often true even when the parties initially believe that settlement is not possible. A settlement reduces the expense and inconvenience of litigation. It also eliminates any uncertainty about the results of a trial.

Alternative dispute resolution services and procedures are available that may help the parties settle their lawsuit faster and at less cost. Often such services are most effective in reducing costs if used early in the course of a lawsuit. Your attorney can aid you in deciding whether and when such services would be helpful in your case.

<u>**Your Rights and Obligations in Court Are Not Affected By This Notice**</u>

You may decide to use an alternative dispute resolution procedure if the other parties to your case agree to do so. In some circumstances, a judge of this court may refer your case to an alternative dispute resolution procedure described below. These procedures are not a substitute for the services of a lawyer and consultation with a lawyer is recommended. Because you are a party to a lawsuit, you have obligations and deadlines which must be followed whether you use an alternative dispute resolution procedure or not. **IF YOU HAVE BEEN SERVED WITH A PETITION, YOU MUST FILE A RESPONSE ON TIME TO AVOID THE RISK OF DEFAULT JUDGMENT, WHETHER OR NOT YOU CHOOSE TO PURSUE AN ALTERNATIVE DISPUTE RESOLUTION PROCEDURE.**

<u>**Alternative Dispute Resolution Procedures**</u>

There are several procedures designed to help parties settle lawsuits. Most of these procedures involve the services of a neutral third party, often referred to as the "neutral," who is trained in dispute resolution and is not partial to any party. The services are provided by individuals and organizations who may charge a fee for this help. Some of the recognized alternative dispute resolutions procedures are:

**(1)** <u>**Advisory Arbitration:**</u> A procedure in which a neutral person or persons (typically one person or a panel of three persons) hears both sides and decides the case. The arbitrator's decision is not binding and simply serves to guide the parties in trying to settle their lawsuit. An arbitration is typically less formal than a trial, is usually shorter, and may be conducted in a private setting at a time mutually agreeable to the parties. The parties, by agreement, may select the arbitrator(s) and determine the rules under which the arbitration will be conducted.

**(2)** <u>**Mediation:**</u> A process in which a neutral third party facilitates communication between the parties to promote settlement. An effective mediator may offer solutions that have not been considered by the parties or their lawyers. A mediator may not impose his or her own judgment on the issues for that of the parties.

CCADM73

**(3) Early Neutral Evaluation ("ENE"):** A process designed to bring the parties to the litigation and their counsel together in the early pretrial period to present case summaries before and receive a non-binding assessment from an experienced neutral evaluator.  The objective is to promote early and meaningful communication concerning disputes, enabling parties to plan their cases effectively and assess realistically the relative strengths and weaknesses of their positions.  While this confidential environment provides an opportunity to negotiate a resolution, immediate settlement is not the primary purpose of this process.

**(4) Mini-Trial:** A process in which each party and their counsel present their case before a selected representative for each party and a neutral third party, to define the issues and develop a basis for realistic settlement negotiations.  The neutral third party may issue an advisory opinion regarding the merits of the case.  The advisory opinion is not binding.

**(5) Summary Jury Trial:** A summary jury trial is a non binding, informal settlement process in which jurors hear abbreviated case presentations.  A judge or neutral presides over the hearing, but there are no witnesses and the rules of evidence are relaxed.  After the "trial", the jurors retire to deliberate and then deliver an advisory verdict.  The verdict then becomes the starting point for settlement negotiations among the parties.

## Selecting an Alternative Dispute Resolution Procedure and a Neutral

If the parties agree to use an alternative dispute resolution procedure, they must decide what type of procedure to use and the identity of the neutral.  As a public service, the St. Louis County Circuit Clerk maintains a list of persons who are available to serve as neutrals.  The list contains the names of individuals who have met qualifications established by the Missouri Supreme Court and have asked to be on the list.  The Circuit Clerk also has Neutral Qualifications Forms on file.  These forms have been submitted by the neutrals on the list and provide information on their background and expertise.  They also indicate the types of alternative dispute resolution services each neutral provides.

A copy of the list may be obtained by request in person and in writing to: Circuit Clerk, Office of Dispute Resolution Services, 7900 Carondelet Avenue, 5th Floor, Clayton, Missouri 63105.  The Neutral Qualifications Forms will also be made available for inspection upon request to the Circuit Clerk.

The List and Neutral Qualification Forms are provided only as a convenience to the parties in selecting a neutral.  The court cannot advise you on legal matters and can only provide you with the List and Forms.  You should ask your lawyer for further information.

CCADM73



## IN THE 21ST JUDICIAL CIRCUIT COURT, ST. LOUIS COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division:<br>JOSEPH L. WALSH III | Case Number: 19SL-CC00743 |
| Plaintiff/Petitioner:<br>KIRKSHIRE CONDOMINIUM ASSOCIATION<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address:<br>SARAH MARIE BUELTMANN<br>3407 SOUTH JEFFERSON<br>SUITE 106<br>SAINT LOUIS, MO 63118 |
| Defendant/Respondent:<br>GWEN ARTHUR | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO 63105 |
| Nature of Suit:<br>CC Foreclosure | (Date File Stamp) |

## Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

The State of Missouri to:   SECRETARY OF HOUSING AND URBAN DEVELOPMENT
Alias:

**GATEWAY TOWER 2**
**400 STATE AVENUE**
**KANSAS CITY, KS 66101-2406**



*COURT SEAL OF*

*ST. LOUIS COUNTY*

You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the Plaintiff/Petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.

SPECIAL NEEDS: If you have special needs addressed by the Americans With Disabilities Act, please notify the Office of the Circuit Clerk at 314-615-8029, FAX 314-615-8739, email at SLCADA@courts.mo.gov, or through Relay Missouri by dialing 711 or 800-735-2966, at least three business days in advance of the court proceeding.

<u>26-FEB-2019</u>
**Date**
**Further Information:**
GJ

_____ Clerk

### Officer's or Server's Affidavit of Service

I certify that:
1. I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2. My official title is _____ of _____ County, _____ (state).
3. I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____, a person of the Defendant's/Respondent's family over the age of 15 years who permanently resides with the Defendant/Respondent.

☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to _____ (name) _____ (title).

☐ other (describe) _____ .

Served at _____ (address)
in _____ County, _____ (state), on _____ (date) at _____ (time).

_____
Printed Name of Sheriff or Server

_____
Signature of Sheriff or Server

**Subscribed and Sworn To me before this** _____ (day) _____ (month) _____ (year)
I am: (check one)   ☐ the clerk of the court of which affiant is an officer.
☐ the judge of the court of which affiant is an officer.
☐ authorized to administer oaths in the state in which the affiant served the above summons.
(use for out-of-state officer)
☐ authorized to administer oaths. (use for court-appointed server)

*(Seal)*

_____
Signature and Title

| Service Fees, if applicable | | | |
|---|---|---|---|
| Summons | $_____ | | |
| Non Est | $_____ | | |
| Mileage | $_____ | (_____ miles @ $ _____ per mile) | |
| Total | $_____ | | |

*See the following page for directions to clerk and to officer making return on service of summons.*

### Directions to Officer Making Return on Service of Summons

A copy of the summons and a copy of the motion and/or petition must be served on each Defendant/Respondent.  If any Defendant/Respondent refuses to receive the copy of the summons and motion and/or petition when offered to him, the return shall be prepared to show the offer of the officer to deliver the summons and motion and/or petition and the Defendant's/Respondent's refusal to receive the same.

Service shall be made:  (1) On Individual.  On an individual, including an infant or incompetent person not having a legally appointed guardian, by delivering a copy of the summons and motion and/or petition to the individual personally or by leaving a copy of the summons and motion and/or petition at the individual's dwelling house or usual place of abode with some person of the family over 15 years of age, or by delivering a copy of the summons and motion and/or petition to an agent authorized by appointment or required by law to receive service of process;  (2) On Guardian.  On an infant or incompetent person who has a legally appointed guardian, by delivering a copy of the summons and motion and/or petition to the guardian personally;  (3) On Corporation, Partnership or Other Unincorporated Association.  On a corporation, partnership or unincorporated association, by delivering a copy of the summons and motion and/or petition to an officer, partner, or managing or general agent, or by leaving the copies at any business office of the Defendant/Respondent with the person having charge thereof or by delivering copies to its registered agent or to any other agent authorized by appointment or required by law to receive service of process;  (4) On Public or Quasi-Public Corporation or Body.  On a public, municipal, governmental or quasi-public corporation or body in the case of a county, to the mayor or city clerk or city attorney in the case of a city, to the chief executive officer in the case of any public, municipal, governmental, or quasi-public corporation or body or to any person otherwise lawfully so designated.

Service may be made by an officer or deputy authorized by law to serve process in civil actions within the state or territory where such service is made.

Service may be made in any state or territory in the United States.  If served in a territory, substitute the word "territory" for the word "state."

The officer making the service must swear an affidavit before the clerk, deputy clerk, or judge of the court of which the person is an officer or other person authorized to administer oaths.  This affidavit must state the time, place, and manner of service, the official character of the affiant, and the affiant's authority to serve process in civil actions within the state or territory where service is made.

Service must not be made less than ten days nor more than sixty days from the date the Defendant/Respondent is to appear in court.  The return should be made promptly, and in any event so that it will reach the Missouri Court within 30 days after service.

# THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI

Twenty First Judicial Circuit

## NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES

### Purpose of Notice

As a party to a lawsuit in this court, you have the right to have a judge or jury decide your case. However, most lawsuits are settled by the parties before a trial takes place. This is often true even when the parties initially believe that settlement is not possible. A settlement reduces the expense and inconvenience of litigation. It also eliminates any uncertainty about the results of a trial.

Alternative dispute resolution services and procedures are available that may help the parties settle their lawsuit faster and at less cost. Often such services are most effective in reducing costs if used early in the course of a lawsuit. Your attorney can aid you in deciding whether and when such services would be helpful in your case.

### Your Rights and Obligations in Court Are Not Affected By This Notice

You may decide to use an alternative dispute resolution procedure if the other parties to your case agree to do so. In some circumstances, a judge of this court may refer your case to an alternative dispute resolution procedure described below. These procedures are not a substitute for the services of a lawyer and consultation with a lawyer is recommended. Because you are a party to a lawsuit, you have obligations and deadlines which must be followed whether you use an alternative dispute resolution procedure or not. **IF YOU HAVE BEEN SERVED WITH A PETITION, YOU MUST FILE A RESPONSE ON TIME TO AVOID THE RISK OF DEFAULT JUDGMENT, WHETHER OR NOT YOU CHOOSE TO PURSUE AN ALTERNATIVE DISPUTE RESOLUTION PROCEDURE.**

### Alternative Dispute Resolution Procedures

There are several procedures designed to help parties settle lawsuits. Most of these procedures involve the services of a neutral third party, often referred to as the "neutral," who is trained in dispute resolution and is not partial to any party. The services are provided by individuals and organizations who may charge a fee for this help. Some of the recognized alternative dispute resolutions procedures are:

**(1) Advisory Arbitration:** A procedure in which a neutral person or persons (typically one person or a panel of three persons) hears both sides and decides the case. The arbitrator's decision is not binding and simply serves to guide the parties in trying to settle their lawsuit. An arbitration is typically less formal than a trial, is usually shorter, and may be conducted in a private setting at a time mutually agreeable to the parties. The parties, by agreement, may select the arbitrator(s) and determine the rules under which the arbitration will be conducted.

**(2) Mediation:** A process in which a neutral third party facilitates communication between the parties to promote settlement. An effective mediator may offer solutions that have not been considered by the parties or their lawyers. A mediator may not impose his or her own judgment on the issues for that of the parties.

CCADM73

**(3) Early Neutral Evaluation ("ENE"):** A process designed to bring the parties to the litigation and their counsel together in the early pretrial period to present case summaries before and receive a non-binding assessment from an experienced neutral evaluator. The objective is to promote early and meaningful communication concerning disputes, enabling parties to plan their cases effectively and assess realistically the relative strengths and weaknesses of their positions. While this confidential environment provides an opportunity to negotiate a resolution, immediate settlement is not the primary purpose of this process.

**(4) Mini-Trial:** A process in which each party and their counsel present their case before a selected representative for each party and a neutral third party, to define the issues and develop a basis for realistic settlement negotiations. The neutral third party may issue an advisory opinion regarding the merits of the case. The advisory opinion is not binding.

**(5) Summary Jury Trial:** A summary jury trial is a non binding, informal settlement process in which jurors hear abbreviated case presentations. A judge or neutral presides over the hearing, but there are no witnesses and the rules of evidence are relaxed. After the "trial", the jurors retire to deliberate and then deliver an advisory verdict. The verdict then becomes the starting point for settlement negotiations among the parties.

## Selecting an Alternative Dispute Resolution Procedure and a Neutral

If the parties agree to use an alternative dispute resolution procedure, they must decide what type of procedure to use and the identity of the neutral. As a public service, the St. Louis County Circuit Clerk maintains a list of persons who are available to serve as neutrals. The list contains the names of individuals who have met qualifications established by the Missouri Supreme Court and have asked to be on the list. The Circuit Clerk also has Neutral Qualifications Forms on file. These forms have been submitted by the neutrals on the list and provide information on their background and expertise. They also indicate the types of alternative dispute resolution services each neutral provides.

A copy of the list may be obtained by request in person and in writing to: Circuit Clerk, Office of Dispute Resolution Services, 7900 Carondelet Avenue, 5th Floor, Clayton, Missouri 63105. The Neutral Qualifications Forms will also be made available for inspection upon request to the Circuit Clerk.

The List and Neutral Qualification Forms are provided only as a convenience to the parties in selecting a neutral. The court cannot advise you on legal matters and can only provide you with the List and Forms. You should ask your lawyer for further information.

CCADM73



**IN THE 21ST JUDICIAL CIRCUIT COURT, ST. LOUIS COUNTY, MISSOURI**

| Judge or Division:<br>JOSEPH L. WALSH III | Case Number:  19SL-CC00743 | |
|---|---|---|
| Plaintiff/Petitioner:<br>KIRKSHIRE CONDOMINIUM ASSOCIATION<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>SARAH MARIE BUELTMANN<br>3407 SOUTH JEFFERSON<br>SUITE 106<br>SAINT LOUIS, MO  63118 | **SHERIFF FEE PAID** |
| Defendant/Respondent:<br>GWEN ARTHUR | Court Address:<br>ST LOUIS COUNTY COURT BUILDING | |
| Nature of Suit:<br>CC Foreclosure | 105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO  63105 | (Date File Stamp) |

## Summons in Civil Case

The State of Missouri to: **GWEN ARTHUR**
Alias:

1055 PINEGATE
ST. LOUIS, MO 63122



*COURT SEAL OF*

*ST. LOUIS COUNTY*

     You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service.  If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.
     **SPECIAL NEEDS:  If you have special needs addressed by the Americans With Disabilities Act, please notify the Office of the Circuit Clerk at 314-615-8029, FAX 314-615-8739, email at SLCADA@courts.mo.gov, or through Relay Missouri by dialing 711 or 800-735-2966, at least three business days in advance of the court proceeding.**

<u>26-FEB-2019</u>
Date
                    _____
                                        /Clerk

Further Information:
GJ

### Sheriff's or Server's Return

Note to serving officer:  Summons should be returned to the court within thirty days after the date of issue.

I certify that I have served the above summons by:  (check one)

☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____a person of the Defendant's/Respondent's family over the age of 15 years who permanently resides with the Defendant/Respondent.

☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to

_____ (name) _____(title).

☐ other _____

Served at _____ (address)

in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____         _____
     Printed Name of Sheriff or Server                                 Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

       *(Seal)*       Subscribed and sworn to before me on _____ (date).

                    My commission expires: _____      _____
                                  Date                              Notary Public

**Sheriff's Fees, if applicable**

| | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary | |
| Supplemental Surcharge | $____10.00____ |
| Mileage | $_____ (_____ miles @ $._____ per mile) |
| **Total** | $_____ |

A copy of the summons and a copy of the petition must be served on each Defendant/Respondent.  For methods of service on all classes of suits, see Supreme Court Rule 54.

## THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI

Twenty First Judicial Circuit

## NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES

### Purpose of Notice

As a party to a lawsuit in this court, you have the right to have a judge or jury decide your case. However, most lawsuits are settled by the parties before a trial takes place. This is often true even when the parties initially believe that settlement is not possible. A settlement reduces the expense and inconvenience of litigation. It also eliminates any uncertainty about the results of a trial.

Alternative dispute resolution services and procedures are available that may help the parties settle their lawsuit faster and at less cost. Often such services are most effective in reducing costs if used early in the course of a lawsuit. Your attorney can aid you in deciding whether and when such services would be helpful in your case.

### Your Rights and Obligations in Court Are Not Affected By This Notice

You may decide to use an alternative dispute resolution procedure if the other parties to your case agree to do so. In some circumstances, a judge of this court may refer your case to an alternative dispute resolution procedure described below. These procedures are not a substitute for the services of a lawyer and consultation with a lawyer is recommended. Because you are a party to a lawsuit, you have obligations and deadlines which must be followed whether you use an alternative dispute resolution procedure or not. **IF YOU HAVE BEEN SERVED WITH A PETITION, YOU MUST FILE A RESPONSE ON TIME TO AVOID THE RISK OF DEFAULT JUDGMENT, WHETHER OR NOT YOU CHOOSE TO PURSUE AN ALTERNATIVE DISPUTE RESOLUTION PROCEDURE.**

### Alternative Dispute Resolution Procedures

There are several procedures designed to help parties settle lawsuits. Most of these procedures involve the services of a neutral third party, often referred to as the "neutral," who is trained in dispute resolution and is not partial to any party. The services are provided by individuals and organizations who may charge a fee for this help. Some of the recognized alternative dispute resolutions procedures are:

**(1) Advisory Arbitration:** A procedure in which a neutral person or persons (typically one person or a panel of three persons) hears both sides and decides the case. The arbitrator's decision is not binding and simply serves to guide the parties in trying to settle their lawsuit. An arbitration is typically less formal than a trial, is usually shorter, and may be conducted in a private setting at a time mutually agreeable to the parties. The parties, by agreement, may select the arbitrator(s) and determine the rules under which the arbitration will be conducted.

**(2) Mediation:** A process in which a neutral third party facilitates communication between the parties to promote settlement. An effective mediator may offer solutions that have not been considered by the parties or their lawyers. A mediator may not impose his or her own judgment on the issues for that of the parties.

CCADM73

**(3) Early Neutral Evaluation ("ENE"):** A process designed to bring the parties to the litigation and their counsel together in the early pretrial period to present case summaries before and receive a non-binding assessment from an experienced neutral evaluator. The objective is to promote early and meaningful communication concerning disputes, enabling parties to plan their cases effectively and assess realistically the relative strengths and weaknesses of their positions. While this confidential environment provides an opportunity to negotiate a resolution, immediate settlement is not the primary purpose of this process.

**(4) Mini-Trial:** A process in which each party and their counsel present their case before a selected representative for each party and a neutral third party, to define the issues and develop a basis for realistic settlement negotiations. The neutral third party may issue an advisory opinion regarding the merits of the case. The advisory opinion is not binding.

**(5) Summary Jury Trial:** A summary jury trial is a non binding, informal settlement process in which jurors hear abbreviated case presentations. A judge or neutral presides over the hearing, but there are no witnesses and the rules of evidence are relaxed. After the "trial", the jurors retire to deliberate and then deliver an advisory verdict. The verdict then becomes the starting point for settlement negotiations among the parties.

## Selecting an Alternative Dispute Resolution Procedure and a Neutral

If the parties agree to use an alternative dispute resolution procedure, they must decide what type of procedure to use and the identity of the neutral. As a public service, the St. Louis County Circuit Clerk maintains a list of persons who are available to serve as neutrals. The list contains the names of individuals who have met qualifications established by the Missouri Supreme Court and have asked to be on the list. The Circuit Clerk also has Neutral Qualifications Forms on file. These forms have been submitted by the neutrals on the list and provide information on their background and expertise. They also indicate the types of alternative dispute resolution services each neutral provides.

A copy of the list may be obtained by request in person and in writing to: Circuit Clerk, Office of Dispute Resolution Services, 105 South Central Ave., 5th Floor, Clayton, Missouri 63105. The Neutral Qualifications Forms will also be made available for inspection upon request to the Circuit Clerk.

The List and Neutral Qualification Forms are provided only as a convenience to the parties in selecting a neutral. The court cannot advise you on legal matters and can only provide you with the List and Forms. You should ask your lawyer for further information.

CCADM73



*2/28  1120*
*(243)  Brad Compliance Specialist*   *8B  3.75*

**FILED**



IN THE 21ST JUDICIAL CIRCUIT COURT, ST. LOUIS COUNTY, MISSOURI

MAR 06 2019

**JOAN M. GILMER**
CIRCUIT CLERK, ST. LOUIS COUNTY

| | |
|---|---|
| Judge or Division:<br>JOSEPH L. WALSH III | Case Number: 19SL-CC00743 |
| Plaintiff/Petitioner:<br>KIRKSHIRE CONDOMINIUM ASSOCIATION<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>SARAH MARIE BUELTMANN<br>3407 SOUTH JEFFERSON<br>SUITE 106<br>SAINT LOUIS, MO 63118 |
| Defendant/Respondent:<br>GWEN ARTHUR | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO 63105 |
| Nature of Suit:<br>CC Foreclosure | |

**SHERIFF FEE PAID**

(Date File Stamp)

### Summons in Civil Case

The State of Missouri to:  VANTAGE CREDIT UNION
Alias:

**AUTHORIZED AGENT**
**4020 FEE FEE ROAD**
**BRIDGETON, MO 63044**

 ⑥ WALLM

COURT SEAL OF

ST. LOUIS COUNTY

    You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.
    SPECIAL NEEDS: If you have special needs addressed by the Americans With Disabilities Act, please notify the Office of the Circuit Clerk at 314-615-8029, FAX 314-615-8739, email at SLCADA@courts.mo.gov, or through Relay Missouri by dialing 711 or 800-735-2966, at least three business days in advance of the court proceeding.

__26-FEB-2019__
Date

Further Information:
GJ

_____
Clerk

### Sheriff's or Server's Return

Note to serving officer:  Summons should be returned to the court within thirty days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____ a person of the Defendant's/Respondent's family over the age of 15 years who permanently resides with the Defendant/Respondent.
☑ (for service on a corporation) delivering a copy of the summons and a copy of the petition to
__Brad__ (name) __Compliance Specialist__ (title).
☐ other _____

Served at __SAA__ (address)
in __St Louis__ (County/City of St. Louis), MO, on __2/28/19__ (date) at __1120 Am__ (time).

__Major Wallace__
Printed Name of Sheriff or Server

__UM__
Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

Subscribed and sworn to before me on _____ (date).

(Seal)

My commission expires: _____
Date

_____
Notary Public

ST. LOUIS COUNTY
SHERIFF'S OFFICE
2019 FEB 27 AM 10 16
RECEIVED

[FEB 27 2019
2-27-19

Electronically Filed - St Louis County - March 18, 2019 - 12:50 PM

13



**IN THE 21ST JUDICIAL CIRCUIT COURT, ST. LOUIS COUNTY, MISSOURI**

| Judge or Division:<br>JOSEPH L. WALSH III | Case Number: 19SL-CC00743 |
|---|---|
| Plaintiff/Petitioner:<br>KIRKSHIRE CONDOMINIUM ASSOCIATION | Plaintiff's/Petitioner's Attorney/Address:<br>SARAH MARIE BUELTMANN<br>3407 SOUTH JEFFERSON<br>SUITE 106 |
| vs. | SAINT LOUIS, MO 63118 |
| Defendant/Respondent:<br>GWEN ARTHUR | Court Address:<br>ST LOUIS COUNTY COURT BUILDING |
| Nature of Suit:<br>CC Foreclosure | 105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO 63105 |

(Date File Stamp)

## Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

The State of Missouri to:  SECRETARY OF HOUSING AND URBAN DEVELOPMENT
Alias:

GATEWAY TOWER 2
400 STATE AVENUE
KANSAS CITY, KS 66101-2406

*COURT SEAL OF*

*ST. LOUIS COUNTY*

You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the Plaintiff/Petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.

SPECIAL NEEDS: If you have special needs addressed by the Americans With Disabilities Act, please notify the Office of the Circuit Clerk at 314-615-8029, FAX 314-615-8739, email at SLCADA@courts.mo.gov, or through Relay Missouri by dialing 711 or 800-735-2966, at least three business days in advance of the court proceeding.

<u>26-FEB-2019</u>
Date
Further Information:
GJ

_____
Clerk

---

### Officer's or Server's Affidavit of Service

I certify that:
1. I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2. My official title is _DEPUTY_ of _Wyandotte_ County, _Kansas_ (state).
3. I have served the above summons by: (check one)
   ☒ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
   ☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____, a person of the Defendant's/Respondent's family over the age of 15 years who permanently resides with the Defendant/Respondent.
   ☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to _____ (name) _____ (title).
   ☐ other (describe) _____

Served at _400 State Ave  KCKS 66101_ (address)
in _Wyandotte_ County, _Kansas_ (state), on _14 mar 249_ (date) at _1245_ (time).

_M Sitzler                1210_
Printed Name of Sheriff or Server

_M Sitzler    1210_
Signature of Sheriff or Server

Subscribed and Sworn To me before this _____ (day) _____ (month) _____ (year)
I am: (check one)  ☐ the clerk of the court of which affiant is an officer.
                    ☐ the judge of the court of which affiant is an officer.
                    ☐ authorized to administer oaths in the state in which the affiant served the above summons. (use for out-of-state officer)
                    ☐ authorized to administer oaths. (use for court-appointed server)

*(Seal)*

_____
Signature and Title

Electronically Filed - St Louis County - March 18, 2019 - 12:50 PM

**SHERIFFS RETURN**

**THE STATE OF KANSAS**                                    **COUNTY OF WYANDOTTE**

CASE NO: _19SL CC OO 743_          DEFENDANT: _Sec OF Housing | uBan DEVEPMoNT_

I received this summons for service on the _14_ day of _MAR_, 2019 @ _8 OO_ Hr's _Am_

I hereby certify the below service on this summons:

o   **PERSONAL SERVICE:** By delivering a copy of said summons and a copy of the Petition to
     the defendant _____ at _____

o   **RESIDENCE SERVICE:** By leaving a copy of said summons and a copy of the Petition at the
     usual place of residence of the defendant with_____, a person of
     suitable age and discretion residing therein, at, _____ for, _____

☒   **AGENT SERVICE:** By delivering a copy of said summons and a copy of the petition to the
     Agent named, ___Josh_____, authorized by appointment or by law to receive
     service of process at _400 STATE Ave    KcKS 66/01_ for _Sec. OF Housing | uBan   DevePhmnT_

o   **RESIDENCE SERVICE and MAILING:** By leaving a copy of said service and copy of said
     petition at the usual place of residence of the defendant and mailing by first class mail a notice
     that such copies have been left at:_____ for : _____

o   **EVICTION:**
     Completed_____Cancelled_____

o   **NO SERVICE:** The defendant was not found in this county after diligent search and inquiry.

o   **COMMENT:**_____
     _____
     _____

**MOVED:**
     Per:_____

o   **NO PROPERTY FOUND IN THIS COUNTY.**
☒   On The ___14___ day of _____Mpecch_____ 2019, @ _1240_ hrs

     By__M ZIEGLER_____ #_1210_ Deputy Sheriff

     Nichele Glimpse
     exp: 10/17/2021

MICHELE GLIMPSE
NOTARY PUBLIC
STATE OF KANSAS